[No. 3,121.]

## GILBERT PALACHE *v.* PACIFIC INSURANCE COMPANY.

REQUISITION ON INSURANCE COMPANY TO REPAIR CAPITAL STOCK.—The Insurance Commissioner may, under the Act of March 26th, 1868, creating his office (Stats. 1867-8, p. 336), legally require an insurance company, ascertained by him to be insolvent, as therein provided, to repair its capital stock without revoking its certificate.

STATUTORY CONSTRUCTION—GENERAL TENOR AND SCOPE OF LEGISLATIVE SCHEME.—In the construction of statutes for the purpose of ascertaining the legislative intent, regard is to be had not so much to the exact phraseology in which that intent has been expressed as to the general tenor and scope of the entire legislative scheme embodied in the statute.

INSURANCE COMMISSIONER'S POWERS — REQUISITION TO REPAIR STOCK WITHOUT REVOCATION OF CERTIFICATE.—The Act relating to the office, powers, and duties of Insurance Commissioner (Stats. 1867-8, p. 336) plainly distinguishes between the effect of a revocation of a certificate by such Commissioner and a requisition by him to repair capital stock; and it does not oblige him to make a revocation before he can require a repair.

DUTIES OF INSURANCE COMMISSIONER—DISCRETION.—The duties imposed upon the Insurance Commissioner, though generally defined by the Act creating his office (Stats. 1867-8, p. 336), are in their nature largely discretionary, and depend for their efficient performance in a great degree upon the exercise of an enlightened and careful discrimination with reference to the circumstances of the particular case with which he has to deal.

NO LIMIT TO ASSESSMENTS BY INSURANCE COMPANIES WHEN REQUIRED TO REPAIR CAPITAL STOCK.—The limitation of five per cent in the imposition of assessments upon the capital stock of corporations, as provided by the Act of March 26th, 1866 (Stats. 1865-6, p. 458), has no application to assessments made by an insurance company, in response to a requisition of the Insurance Commissioner, under the Act of March 26th, 1868 (Stats. 1867-8, p. 336), for the repair of its capital stock.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The facts are stated in the opinion.

*W. H. Rhodes,* for Appellant.

The assessment of seventy-five per cent upon the capital stock of the Pacific Insurance Company was illegally levied, because:

1. The power to levy assessments upon the stock of corporations is limited by the statute of March 26th, 1866, to five per cent.

2. The antecedent requirements of the Act creating the office of Insurance Commissioner were not complied with before the requisition was served upon the company.

Section eight of the Act, after stating the particular circumstances under which the power of the Commissioner can be exercised by revoking the certificate of a company, provides that "in such cases he may require a repair of the capital stock." The "such cases" evidently alludes to those mentioned in the preceding clauses; and as the circumstances here do not present such a case, the Commissioner exceeded his powers, and the assessment is void.

*S. M. Wilson,* for Respondent.

The neglect of the Commissioner to revoke the certificate, or to publish, if obligatory on him, cannot impair the effect of his requisition. It was his duty to make the requisition, and he did it. On the requisition it was the duty of the company to levy the assessment, and they did it. The validity of the assessment can in no way depend on the revocation of the authority to do business. The revocation refers to the future merely; the requisition is to repair past losses. The assessment is to pay losses already accrued; and those losses must be paid whether any further

business be done or not. The two matters are not dependent on each other.

The spirit and object of the whole Act relating to this subject must be considered. In construing it, force and effect should be given, if possible, to each of its provisions. (*French* v. *Teschemacher*, 24 Cal. 639.) Viewed in this light, the words "such cases" mean cases of insolvency, and not cases of revocation of authority and newspaper notice. Taking the whole section together, it would seem that the validity of the assessment depends on the requisition, and the requisition depends on the ascertainment by the Commissioner of the insolvency under the artificial standard established. In fact, it would not be unreasonable to hold that where the Commissioner has power to compel an assessment a company may voluntarily levy it.

The limit of assessments to five per cent, under the Act of 1866, does not apply to cases like the present. The five per cent assessment is "for the purpose of paying the proper and legal expenses of such corporation." The assessment, under the insurance laws, is to repair the capital where it has been impaired twenty per cent; and, consequently, such assessment is only limited by the amount necessary to make up the deficiency.

By the Court, WALLACE, J.:

The appeal in this case was taken from a judgment rendered in favor of the defendant in the Court below, upon the following case agreed:

" 1. On the 14th of July, 1863, the Pacific Insurance Company became a body politic and corporate, under the Act of the Legislature of this State entitled 'An Act concerning corporations,' approved April 22d, 1850, and the several Acts amendatory thereto up to said 14th of July, 1863, and duly organized immediately thereafter, and has ever since

continued in business as a corporation; the objects for which
the company was formed are stated in the certificate of in-
corporation to be to form an insurance company and to make
contracts of indemnity, grant policies of insurance, and trans-
act all other business which a corporation so formed may law-
fully do.

"2. On the 11th of July, 1866, the said company, by due
proceedings taken under the Act of the Legislature of this
State entitled 'An Act relating to fire and marine insurance
companies,' approved April 2d, 1866, adopted the provisions
of the said Act.

"3. On the 11th day of February, 1867, by due proceed-
ings had under the statutes in such cases made and provided,
the said company increased its capital stock from seven hun-
dred and fifty thousand dollars to one million dollars.

"4. On the 4th of June, 1868, W. Ashburner became the
owner of ten shares in the capital stock of said company, and
received therefor a certificate in form prescribed by the Di-
rectors and the by-laws of the company; the certificate was
in the words and figures following, viz:

"'Number 634.]                                          [10 shares.
                "'Incorporated July, 1863.
               "'Pacific Insurance Company.
"' Capital, $1,000,000.              10,000 shares, $100 each.
[Internal revenue, 25 cents, canceled.]

                        "'SAN FRANCISCO, June 4th, 1868.
"'This certifies that W. Ashburner is entitled to ten
_____ shares of the capital stock of the Pacific Insur-
| Corporate |  ance Company.  Transferable on the books of
|   Seal    |
|  of the   |  the company only in compliance with the condi-
| Company.  |  tions printed on the back of this certificate.
                        "'J. HUNT, President.
"'A. J. RALSTON, Secretary.'

" Printed on the back of the above certificate was the following indorsement, viz:

"'No transfer of stock shall be made upon the books of the company until after the payment of all assessments imposed thereon, and of all the indebtedness due to the company by the person in whose name the stock stands on the books of the company, except with the consent of the Finance Committee; nor shall any transfer be made without the indorsement and surrender of this certificate.

"'For value received I, or we, do hereby sell and assign unto —— —— ten shares of the capital stock of the Pacific Insurance Company, as per this certificate; and I, or we, constitute and appoint —— —— my, or our, true and lawful attorney, for me or us, and in my, or our, name and stead, to transfer the above number of shares and to sign and execute all necessary papers to that end, hereby ratifying all lawful acts of my, or our, said attorney done by virtue hereof.

"'San Francisco, —— —.

"'Witness:          —— ——.'

"5. On the 30th of October, 1871, the said Ashburner sold his said ten shares of stock to Gilbert Palache, and made an assignment thereof on the back of the certificate by filling in the name of said Palache in the blank places left therefor in the said printed form of assignment, and by signing his name at the foot of said assignment, and delivering the same to said Palache.

"6. Afterwards, and on the same day, said Palache presented himself at the office of said company with the said certificate of stock so indorsed and signed by said Ashburner, and offered to surrender said certificate for cancellation, and requested the officers of said company to enter the said transfer on the books of said corporation, and that a new certificate be issued to him for the same.

" 7. The officers of said company refused to receive and cancel said certificate, and refused to enter such transfer on the books of the corporation, upon the grounds that an assessment of seventy-five per cent had been duly levied upon said capital stock on the 20th of October, 1871, and remained unpaid. The said Ashburner and Palache each refused to pay said assessment, on the ground that the same was not legal and binding.

" 8. The by-laws of the company at the time aforesaid, and now in force, provides, among other things, as follows, viz:

### " ' TRANSFER OF STOCK.

" ' SEC. 13. The stock of the company shall be transferable in such manner as is provided by section twelve of an Act concerning corporations, passed April 22d, 1850, as the same was amended April 8th, 1862; but no transfer of stock shall be made upon the books of the company until after the payment of all assessments imposed thereon, and of all indebtedness due to the company by the person in whose name the stock stands on the books of the company, excepting with the consent of the Finance Committee; nor shall any transfer be made without the surrender of the certificate, and upon such surrender the word ' canceled ' shall be written across the face of the certificate by the Secretary, and the signatures of the officers shall be erased, and such certificate so canceled shall be preserved by pasting the same to the stub from which it was torn in the Certificate Book; provided, however, that the original corporators may, by their instrument in writing, duly assign to the persons who have signed the Subscription Book the amount of stock by each respectively subscribed. And the restrictions upon the transfer of stock expressed in this section shall be printed upon the back of each certificate of stock.'

" 9. The assessment above referred to was made under

the following circumstances and in the following mode—that is to say:

"On the 20th of October, 1871,. the Hon. George W. Mowe, the Insurance Commissioner of the State of California, made an examination of the business and affairs of said Pacific Insurance Company, induced thereto by reason of the late disastrous fire at the .City of Chicago, Illinois, and, upon said examination, ascertained and declared that the condition of said company was as is shown in the requisition herein below set forth.

"10. The Insurance Commissioner immediately thereafter, and upon the said 20th of October, 1871, gave notice to said company, and made his requisitions in the words and figures following, viz:

"' OFFICE OF INSURANCE COMMISSIONER, ⎱
"' SAN FRANCISCO, October 20th, 1871. ⎰

"' *To the Pacific Insurance Company, its President, Vice President, and Directors:*

"' You will please take notice that, after inspecting and examining the affairs of your company, with a view to ascertain its condition and ability to fulfill its engagements, which examination was made because of the recent disastrous fires at the City of Chicago, Illinois, and at the request of your officers, I have ascertained and declared that the liability of said company for losses reported, for expenses, taxes, and reinsurance of all outstanding risks, estimated at fifty per cent of the premiums received on fire risks and marine time risks, and at the entire premium on all marine risks, would and do impair the capital stock of said company already paid in to an extent exceeding twenty per cent.

"' And I do, therefore, pursuant to the statute of this State in such cases made and provided, require the said

Pacific Insurance Company to repair its capital on or before the 30th of December, A. D. 1871.

"'(Signed)          GEORGE  W.  MOWE,

"'Insurance Commissioner.'

[Seal of Insurance Commissioner.]

"11. The said Insurance Commissioner did not, on ascertaining the condition of said company to be as set forth in his said notice and requisition, nor before making his said requisition, nor has he at any time since revoked the certificate of authority which he had previously granted said company to do business, and under which it had been doing business, at the time of said examination and requisition, and did not give or publish any notice of revocation of such certificate of authority; but said Commissioner gave, on said 20th of October, 1871, the notice and requisition herein above set forth.

"12. After receiving from said Insurance Commissioner the notice and requisition aforesaid, and upon the same day, the Board of Directors of said company, duly assembled, did forthwith call upon its stockholders, by assessment, for the sum of seven hundred and fifty thousand dollars, being the amount necessary to make its capital equal to the amount required by the statute in such cases made and provided— that is to say, said Board of Directors passed the following resolution and made the following order, viz:

"'WHEREAS, This company has, on this 20th day of October, 1871, been notified by the Hon. George W. Mowe, Insurance Commissioner of the State of California, that, upon an examination of the business and affairs of this company, he has ascertained that the liabilities of this company, for losses reported, for expenses, taxes, and reinsurance of outstanding risks, estimated at the rate fixed by the statute in such cases made and provided, would impair the capital

stock of this company already paid in, to an extent exceeding twenty per cent, and

" ' Whereas, Said Commissioner has, also, made his requisition upon this company, requiring it to repair its capital on or before the 30th of December, 1871, and

" ' Whereas, Pursuant to said requisition of said Insurance Commissioner, it is necessary to call upon the stockholders, by assessments, for such amount as will repair its capital, according to the statute in such cases made and provided—that is to say, seven hundred and fifty thousand dollars, or seventy-five per cent of the capital stock; therefore

" ' *Resolved*, That an assessment of seventy-five dollars per share be, and the same is hereby, levied upon the capital stock of this company, payable on and after the twenty-first day of October, instant, to the President and Vice President of this company, at the office of the company, No. 422 California street, in the City and County of San Francisco, California; and that any stock upon which said assessments shall remain unpaid on the 1st day of December, 1871, shall be deemed delinquent, and shall be duly advertised for sale at public auction, and, unless payment be made before, shall be sold on the 18th day of December, 1871, to pay the delinquent assessment, together with costs of advertising and expenses of sale.'

" 13. Upon the making of said order last aforesaid, the Secretary of said company caused to be published immediately, and daily thereafter, in two daily newspapers, published in the City and County of San Francisco, California, which is the principal place of business and office of said company, a notice, of which the following is a copy, viz:

" ' NOTICE TO STOCKHOLDERS PACIFIC INSURANCE COMPANY,

Having its location and principal place of business at the City and County of San Francisco, California — Notice is

hereby given that at a meeting of the Directors of said company, held on the 20th day of October, 1871, an assessment of seventy-five dollars per share was levied upon the capital stock of said company, payable on and after the 21st day of October, 1871, to the President and Vice President of this company, at the office of the company, No. 422 California street, in the City and County of San Francisco, California.

"'Any stock upon which said assessment shall remain unpaid on the 1st day of December, 1871, shall be deemed delinquent, and will be duly advertised for sale at public auction, and, unless payment shall be made before, will be sold on the 18th day of December, 1871, to pay the delinquent assessment, together with cost of advertising and expenses of sale.

"'ANDREW BAIRD, Secretary pro tem.

"'No. 422 California street, San Francisco, California, October 20th, 1871.'"

Upon the foregoing facts it is contended by the plaintiff, Palache, that the said assessment is not a legal and valid assessment, but that the same is null and void, and affords no legal impediment to the transfer of said ten shares of stock of said company on its books, and that said officers are bound by law to cause the said transfer and assignment to be entered on the said books. The said company contends that said assessment is valid, legal, and binding, and that, until paid, it is not bound under its by-laws and the form of the said certificate, so delivered to said Ashburner, to enter said transfer and assignment in its books, or otherwise recognize said assignment.

The question, therefore, presented to the Court for its decision, is, whether the said assessment, so levied, is legal, valid, and binding, and to render judgment accordingly. If judgment be against the said Palache, it shall be that he take

nothing by said proceedings as against said Pacific Insurance Company, but shall pay the costs of this proceeding.

If judgment be against the said company, it .shall be for the sum of three hundred dollars, the agreed value of said ten shares of stock, with the costs of this proceeding.

Upon the oral argument the judgment was affirmed from the bench, but the importance of the points involved renders it proper that a statement be made of the views upon which the judgment proceeded.

The statute upon which the controversy arose is the Act of March 26th, 1868, creating the office of Insurance Commissioner (Acts of 1867–8, p. 336); so far as it is material to the points made in argument, it is as follows:

"Sec. 7. Whenever the liabilities of any person engaged in the insurance business, for losses reported, for expenses, taxes, and reinsurance of all outstanding risks, estimated at fifty per cent of the premiums received on fire risks and marine time risks, and at the entire premiums on all other marine risks, and at such rates for life, accidental, and other kinds of insurance as shall be generally accepted by the actuaries of the States of New York and Massachusetts, would impair his capital stock already paid in to an extent exceeding twenty per cent, such person is hereby declared to be insolvent.

"Sec. 8. Whenever it shall be ascertained by the Commissioner that any person engaged in the insurance business in this State is insolvent, within the true intent and meaning of this Act, he shall, and is hereby empowered to revoke the certificate granted in behalf of such person, and shall send by mail to such person, addressed to him at his principal place of business, or deliver to him personally, notice of such revocation, and shall cause notice of such revocation to be filed in his office, and also to be published in some public newspaper published in the City of San Francisco, for at least four weeks; and such person is required, after receiving notice of said revocation, or after the first publication

thereof, to discontinue the issuing of any new policies and the renewal of any previously issued; and in such cases the Commissioner shall require the said person, or his manager or agent, to repair its capital within such period as he may designate in such requisition. Any company, corporation, or association receiving the aforesaid requisition from the Commissioner, shall forthwith call upon its stockholders, by assessments, for such amounts as will make its capital equal to the amount of its paid-up capital, exclusive of assets needed to pay all ascertained liabilities for losses reported, for expenses and taxes, and exclusive of the entire premiums received for outstanding risks; and in case any stockholder shall refuse or neglect to pay the amount so called for, it shall be lawful for said company, corporation, or association, to enforce such assessment by such notice and sale as are provided for by the Act entitled an Act concerning assessments upon the stock of corporations, approved March 26th, 1866. In case any person, upon the requisition of the Commissioner as aforesaid, shall fail to make up the deficiency of his capital in accordance with the requirements aforesaid, or to comply in all respects with the insurance laws of this State, the Commissioner shall communicate the facts to the Attorney General, whose duty it shall then become to commence an action in the name of the people of this State, in the District Court of the judicial district where the person in question is located or has his principal office, against such person, and apply for an order requiring him to show cause why his business should not be closed; and the Court shall thereupon proceed to hear the allegations and proofs of the respective parties as in other cases; and in case it shall appear to the satisfaction of the Court that such person is insolvent, as aforesaid, or that the interests of the public so require, the Court shall decree a dissolution of such company, corporation, association, or firm, and a winding up of its affairs and a distribution of the effects of

such person.   But otherwise, the Court shall enter a decree annulling the act of the Commissioner in the premises, and authorizing such person to resume business.   But the Commissioner shall not be held liable for damages in the attempted performance of his duty herein, if he has acted in good faith.   In the event of any additional losses occurring upon new risks taken after the expiration of the period limited by the Commissioner in the requisition, and before the deficiency shall have been filled up, the Directors of any company, corporation, or association shall be individually liable to the extent thereof."

1. It was objected in argument upon the part of the appellant, that the requisition of the Commissioner, by which he required the company to repair their capital stock, and in assumed obedience to which the company levied the assessment complained of, was itself invalid and unauthorized by the provisions of the statute already referred to, because the Commissioner did not then, or at any time, revoke the certificate of authority which he had previously, under section four of the statute, granted to the company, authorizing it to transact insurance business.   It was argued, in this connection, that the phrase "*in such cases,*" occurring in section eight, and defining the cases in which such a requisition is authorized, embraces only those cases in which the Commissioner had not only ascertained the fact of insolvency, but had also revoked the certificate itself.   It was said that the language employed in the statute (section eight) is mandatory upon the Commissioner, that whenever he shall ascertain the fact of insolvency, *he shall,* and is hereby empowered to revoke "the certificate granted," etc.   It is well settled that in the construction of statutes, for the purpose of ascertaining the legislative intent, regard is to be had not so much to the exact phraseology in which that intent has been expressed, as to the general tenor and scope of the entire legislative scheme embodied in the Act.

Mere philology often sticks in the bark, and so becomes an obstruction rather than an aid to a correct exposition of the meaning of the statute. The Act under consideration plainly distinguishes between the effect of a revocation notified and a requisition received. In the former case it declares that the company shall absolutely discontinue the taking of new risks, the issuing of new policies, and the renewal of old ones. (Sec. 8.) Such revocation deprives the company of the certificate of authority which (under section nine) it must possess before it can be lawful to transact insurance business at all, " and all policies issued or renewed, and all insurances taken before the issuance of such certificate shall be null and void for all purposes whatsoever." (Sec. 9.) But the consequences of a requisition for the repair of capital stock upon insurance business transacted intermediate the receipt of the requisition and the expiration of the time therein limited are widely different from those which ensue upon a revocation notified. The company may, of course, at once and without delay, supply the deficiency in its capital stock, and in that event the transaction of its business is wholly unaffected by the requisition made. Otherwise it may, at its option, suspend the taking of insurances and the issuance of new policies during the time limited in the requisition; or, if it prefer, it may take such new risks, even before the deficiency in its capital stock be supplied, the Directors being in that case, however, personally liable for any loss which may occur upon such new risks thus taken. But if we are to hold that in every case where a requisition to repair capital stock is received a revocation must first be notified, it is obvious that the revocation must operate to utterly destroy the privilege plainly acceded to the company intermediate the receipt of the mere requisition and the expiration of the time therein limited for making the required repair of the capital stock. A construction involving such results would be in plain conflict with the apparent intent

had in view by the statute. There are other considerations, too, which present themselves, if attention be had to the general scope of the Act and the purpose in which it originated, and which confirm us in the view we have expressed upon this point.

The duties imposed upon the Commissioner of Insurance, though defined in a general way, are in their nature largely discretionary, and depend for their efficient performance in a great degree upon the exercise by him of an enlightened and careful discrimination with reference to the circumstances surrounding each particular case with which he is expected to deal. He is generally to do and perform with justice and impartiality the duties of his office in connection with the laws regulating the business of insurance in this State, and to enforce the execution of such laws according to the true intent and meaning thereof. (Sec. 4.) With this view he is clothed with important powers, to be exercised to a greater or less extent according as the particular circumstances appearing may, in his judgment, require. It may be, for instance, that an insurance company is ascertained by him to be insolvent in fact and in a commercial sense, and the risks to be taken by such a company therefore absolutely worthless to the assured. In such a case it may, and doubtless would be, his duty to exert the high authority devolved upon him by law, to revoke its certificate at once, as the only means by which the interests of the public could be preserved. Such a case would, however, be clearly and easily distinguishable from another, in which there was found to be *only the technical insolvency* defined by the provisions of the statute itself.

For it will be observed that section seven of the Act establishes a test of solvency and insolvency of a merely arbitrary character, and under the operation of which an insurance company may, within the intent and for the purposes of the statute, be held insolvent, and at the same time

be not only really and actually solvent in a business sense, but justly so regarded in the commercial world. Thus, in order to ascertain the present condition of the company as being one of solvency or insolvency, for the mere purposes of the statute, the Commissioner must assume, against the condition of solvency, that certain losses, though yet in fact only reported, are already established and ascertained; that in relation to outstanding risks, not yet heard from even by report, all of those of one and half of those of another designated class will eventually prove to be losses; and the probable losses thereafter to be sustained upon outstanding risks of yet another general character are to be arrived at by applying the rules of calculation in such cases adopted by the actuaries in the States of New York and Massachusetts.

If under the provisions of the statute the Commissioner should determine, upon a proper investigation had, that the company, though insolvent within the intent of the Act, was, nevertheless, solvent in a business point of view, we should be surprised to find, and we do not find, upon examination of the Act, that he had no discretion to stop with the delivery of the requisition, but must, of mere legal necessity, resort to the harsher measure of an absolute revocation of the company's certificate. We would, we think, greatly misapprehend the scope and purpose of the Act should we hold that, under its provisions, the Commissioner is to exercise no discretion in this most important respect, but that, being once put in motion, he must in all cases, *nolens volens,* proceed to the same and a uniform extremity against all companies with whose financial condition he is called upon to deal, and that he cannot legally require a company to merely repair its capital, even in a case where such repair is all that is needed, but must first

revoke its certificate, suspend, and, perhaps, thereby nearly destroy its business, and certainly injure its general credit in advance by an official promulgation of his judgment, that the company is wholly unfit to transact business at all, and that only after that step has been taken, and notice thereof " published in some public newspaper published in the City of San Francisco for at least four weeks," is he to call upon the company to repair its capital—if it can.

We think that such an interpretation of the statute would, in its inevitable consequences, involve the absolute destruction of the business of insurance, instead of regulating its transactions.

2. It is claimed in the second place that even if the requisition to repair the capital stock is to be considered as valid, it will not authorize the assessment, as here made, that by the Act of March 26th, 1866 (Stats. 1865–6, p. 458), it is provided that no one assessment shall exceed five per cent of the stated amount of the capital stock of the corporation.    But the Act of 1868, which we have been considering, expressly provides that, upon receiving the requisition from the Commissioner, the company "shall forthwith call upon its stockholders, by assessments, for such amounts as will make its capital equal to the amount of its paid-up capital," etc., and enacts that such assessments shall be enforced by such notice and sale as are provided for by the Act of March 26th, 1866.

It results that the limitation of five per cent in the imposition of assessments has no application to assessments made in response to the requisition of the Commissioner, under the Act of 1868, for the repair of the company's capital.