[No. 15496. In Bank.—January 25, 1894.]

STATE INVESTMENT AND INSURANCE COMPANY, PETITIONER, *v.* SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO ET AL., RESPONDENTS.

101   135
101   153
|101   135
|102   452

101   135
115   285

|101   185|
|128   399|
|f129  634|

CORPORATIONS—INSOLVENCY—JURISDICTION OF SUPERIOR COURT.—The superior court acquires jurisdiction over the estate of an insolvent corporation, when a petition in insolvency has been filed by its creditors, setting forth facts constituting the insolvency of the corporation, and praying that it be adjudged an insolvent debtor.

ID.—ADJUDICATION OF INSOLVENCY—RELATION TO PETITION.—An adjudication of insolvency of the debtor has relation to the time when the petition was filed, and renders void any intervening transfer or encumbrance of the property of such debtor.

ID.—INSOLVENCY OF INSURANCE CORPORATION—DISSOLUTION—STATUTORY CONSTRUCTION.—The insolvent act, by the declaration that its provi-

sions shall apply to corporations, includes corporations organized for the purpose of insurance, and has not been superseded by the provisions of section 601 of the Political Code providing for the dissolution of insurance corporations.

ID.—POWER OF COURT—DECREE OF DISSOLUTION—DISTRIBUTION OF ASSETS. The provisions of section 601 of the Political Code are intended to secure merely the dissolution of the delinquent insurance corporation, and do not confer upon the court which decrees the dissolution the power to distribute its effects to the stockholders and creditors through its own action.

ID.—JURISDICTION OF COURT STATUTORY.—The jurisdiction of the superior court to decree a dissolution of any corporation exists only by virtue of statutory authority; and its jurisdiction is limited by the provisions of the statute, both as to the conditions under which it may be invoked and the extent of the judgment which it may make in the exercise of this jurisdiction.

ID.—ORDER TO SHOW CAUSE—INJUNCTION—RECEIVER.—When the attorney general commences an action to dissolve a corporation, the only order which the court is authorized to make is one requiring the corporation to show cause why its business should not be closed, and, until the return day of this order, the court has no power either to enjoin the corporation from doing business, or to disturb it in the possession of its estate by the appointment of a receiver, or to assume control or management of the estate of the corporation.

ID.—SETTLEMENT OF CORPORATE AFFAIRS UPON DISSOLUTION—POWER OF COURT TO APPOINT RECEIVER.—The power of the court recognized in section 400 of the Civil Code to appoint persons other than the directors or managers of the corporation, at the time of its dissolution, to settle its affairs, does not authorize the court to take upon itself the power to settle its affairs or to appoint a receiver for that purpose.

ID.—LIMITATION OF POWER OF APPOINTMENT.—The authority given in section 565 of the Code of Civil Procedure to appoint persons in the place of those who are directors of the corporation at the time of its dissolution is the measure of the power granted, and can only be exercised upon an application therefor either by a creditor or a stockholder of the corporation, and can neither be invoked at the instance of a stranger nor assumed by the court of its own motion.

ID.—JURISDICTION OF APPOINTEES—POWER OF DIRECTORS.—The persons so appointed become trustees in the place of the directors of the corporation, and with the same powers and responsibilities that are conferred by section 400 of the Civil Code upon the directors in office at the time of its dissolution.

ID.—INTEREST OF STATE.—In an action by the state to dissolve a delinquent corporation, the state has no interest either in the assets of the corporation or in its debts, and when it has secured the dissolution of the corporation its functions in the action have ceased.

ID.—STATUTORY INSOLVENCY OF INSURANCE COMPANY—CONTROL OF PROPERTY.—The insolvency upon which a dissolution of an insurance corporation is authorized under section 601 of the Political Code is a statutory and not an actual insolvency, and where there is no charge of actual insolvency the court should not interfere with the manage-

ment of the business, or take the property of the corporation from the control of the stockholders to whom it still belongs.

ID.—JUDGMENT OF DISSOLUTION—APPOINTMENT OF RECEIVER—APPEAL—STAY OF PROCEEDINGS.—An appeal from a judgment dissolving an insurance corporation suspends the judgment until the determination of the appeal, and while the appeal is pending the court cannot carry into execution that part of its judgment authorizing the appointment of a receiver, and has no jurisdiction to appoint a receiver of the effects of the corporation during the pendency of the appeal.

ID.—EFFECT OF APPEAL.—The effect of an appeal from a judgment when the proceedings are stayed is to preserve the rights of the parties to the controversy in the same condition as they were prior to the entry of the judgment.

ID.—TRANSFER OF PROCEEDINGS IN INSOLVENCY—JURISDICTION—DISSOLUTION OF CORPORATION.—The transfer of proceedings in insolvency against a corporation after an order of adjudication, from the department in which they had been pending, to the department in which the action for dissolution of the corporation was pending, cannot confer upon the court any greater jurisdiction in the latter matter than it previously had.

ID.—WRIT OF PROHIBITION.—Upon application of the corporation, a writ of prohibition must be granted to prevent the superior court from proceeding upon the judgment and orders appointing a receiver with reference to any property of the corporation, and from interfering with or disturbing the possession or control of the corporation as to any of its property or effects, pending its appeal from the judgment of dissolution.

APPLICATION for writ of prohibition of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*Sullivan & Sullivan*, for Petitioner.

*Attorney General W. H. H. Hart*, and *Lindley & Eickhoff*, for Respondents.

*Samuel Rosenheim*, *amicus curiæ*, for Intervening Creditor.

HARRISON, J.—Application for writ of prohibition.

The State Investment and Insurance Company was incorporated under the laws of this state, December 1, 1871, with a capital stock of four hundred thousand dollars, for the purpose of doing a fire insurance business in the city and county of San Francisco, and very soon thereafter organized, with its capital stock fully paid, and commenced the transaction of business.   June 1,

1893, certain creditors of the corporation, whose debts aggregated forty-nine thousand dollars, filed a petition in the superior court of the city and county of San Francisco, setting forth facts constituting acts of insolvency on the part of the corporation, and alleging that the said corporation was insolvent, and praying that it be adjudged an insolvent debtor. Upon filing this petition, the court made an order requiring the corporation to show cause before it, in Department No. Ten, on the 13th of June, why it should not be adjudged an insolvent debtor, and, in its said order, forbade it from transferring any of its property until the further order of the court. This order was duly served upon the corporation, and, on the return day thereof, it appeared in court in obedience thereto, and, the hearing having been continued until the fourteenth day of July, the court on that day made its order adjudging it to be an insolvent debtor, within the intent and meaning of the insolvent act of 1880. July 13, 1893, upon the information of the attorney general, an action was commenced in said superior court by the people of the state of California, against the said corporation and its directors under the provisions of section 601 of the Political Code, for its dissolution and the winding up of its affairs and distribution of its assets.

In the complaint in this action it was alleged that in April, 1893, the insurance commissioner entered upon an examination of the affairs of the said corporation, and, on the 10th of May, as the result thereof, ascertained and declared that on the 1st of January, 1893, the capital stock of the corporation was impaired to the extent of $227,442.73, and thereby reduced to a sum below $200,000, viz., to the sum of $172,557.27, and that by reason thereof the said corporation was, on the first day of January, 1893, insolvent; that thereupon the said insurance commissioner on the 10th of May, 1893, revoked the certificate of authority to do business as an insurance company which had been previously issued to it and required said corporation to discontinue the

issuance of new policies, or the renewal of any pre-
viously issued, and also to repair its capital stock to its
original amount within sixty days thereafter, by an
assessment upon its stockholders ; that said corporation
failed to make up the deficiency of its capital within
said sixty days ; that on the tenth day of July the in-
surance commissioner reported these facts to the attor-
ney-general; that since the first day of January the
business of said corporation had been so conducted that
on the tenth day of July its capital had become impaired
to the extent of $302,100.    Upon filing this complaint
the clerk of the court issued a summons directed to the
defendants therein named, and upon its issuance the
judge of the court, in Department No. Four, made an
order of injunction restraining the corporation, its
directors, agents, attorneys and creditors, and each of
them, and all others acting in aid or assistance of them,
from carrying on any litigation, and from interfering
with, or taking possession of, any of the assets of said
corporation, and appointed the respondent, Van Rey-
negom, temporary receiver to take possession of the
assets of the corporation, and directed that the corpo-
ration show cause before said court on the eleventh day
of August why it should not be closed for business, and
why it should not be dissolved and its assets distributed
to its respective creditors.    August 10th the defendants
answered the complaint, admitting the insolvency of
the corporation, setting up the proceedings that had been
taken against it upon the aforesaid petition in insol-
vency, and that it had been therein declared and adju-
dicated an insolvent debtor, and that such adjudication
had become final, and asked that its assets should be
distributed under the provisions of the Insolvent Act of
1880.    August 24, 1893, the matter having been fully
heard before the court, the judge rendered his decision,
in which he found the facts substantially as alleged in
the complaint and answer, and also found as a fact " that
the business of said corporation should be closed; that the
interests of the public so require, that said corporation

defendant should be dissolved, its affairs wound up, and the assets distributed ; that by reason of litigation now pending, and the race between creditors for preference, the assets of said defendant corporation are being injured and wasted, and by reason thereof distribution under the provisions of section 601, Political Code, will be prevented, unless injunction issue out of this court, and receiver be appointed to take possession of its assets ; that unless such injunction issue and receiver be appointed, irreparable injury, which cannot be compensated in damages to the state, will result, in that it will defeat the operation and enforcement of the insurance laws of the state of California." Judgment was thereupon rendered in this proceeding "that said defendant, the State Investment and Insurance Company, which is a corporation organized and existing by virtue of the laws of the state of California, be and the same is hereby dissolved ; that the affairs of said corporation be wound up, and that a distribution of the effects of said defendant corporation be made under the control of said court in the above-entitled action."

By said judgment the court also appointed the respondent, Van Reynegom, as receiver of all the property, estate, and effects of the corporation, and directed every person and official having any property belonging to it to deliver the same into his possession, and provided that such receiver should have power and authority, under the control of the court and in obedience to its orders, to hold and dispose of the property of said corporation, and to wind up its affairs and distribute its property and effects. From this judgment the defendants appealed to this court on the 26th of August, and on the 28th of August the superior court, upon the motion of the attorney general made an *ex parte* order appointing Van Reynegom receiver of the property of the corporation, to keep and preserve the same during the pendency of said appeal. From this latter order the corporation also appealed, and on the 30th of August, after the taking and perfecting of said appeal, the court

made another order, reciting its former one appointing the receiver and that he had qualified as required therein, by which it "finally appointed" him receiver pending the appeal. September 15th the petitioner herein made an application to this court, setting forth that under the foregoing orders the said receiver claims to be entitled to the possession of its property, and had made demand therefor, and that the superior court had instructed said receiver to demand and take into his possession all of the estate and effects of the petitioner; and prayed for a writ of prohibition directed to the respondents herein commanding and directing them to refrain and desist from further proceeding upon the said judgment or orders with reference to any property of said corporation, and from interfering with, or disturbing the possession or control of, the corporation as to any of its property or effects. Upon this application an alternative writ of prohibition was issued, and upon return thereto the respondents filed an answer, substantially in the nature of a demurrer to the petition, in which they contend that the proceedings in insolvency were superseded by and merged in the proceedings for the dissolution of the corporation, and that the court in which this latter proceeding is pending had jurisdiction to make the orders, and to wind up the affairs and distribute the effects of the corporation.

Section 8 of the Insolvent Act of 1880 provides that "an adjudication of insolvency may be made on the petition of five or more creditors, residents of this state, whose debts or demands accrued in this state, and amount in the aggregate to not less than five hundred dollars; provided that said creditors, or either of them, have not become creditors by assignment within sixty days prior to the filing of said petition"; and section 36 of the act declares that "the provisions of this act shall apply to corporations"; and "whenever any corporation is declared insolvent all its property and assets shall be distributed to the creditors, but no discharge shall be

granted to any corporation." Upon filing the petition authorized by section 8 the court takes jurisdiction of the subject matter of the insolvency, and upon the service of the order requiring the alleged insolvent to appear in answer thereto, provided by section 9, it acquires jurisdiction over the debtor. The order of the court forbidding the debtor to transfer any of his property, which is authorized by section 9, is in the nature of a provisional attachment or sequestration of his estate, and brings it under the control and dominion of the court. Section 12 provides that the court may, upon the default of the debtor, or after a trial upon the issues in the proceeding, make an order adjudging that he is, and was at the date of filing the petition, an insolvent debtor. Hence, this adjudication of insolvency has relation to the time when the petition was filed, and renders void any intervening transfer or encumbrance of his property. The superior court, therefore, acquired jurisdiction over the estate of the petitioner on the first day of June, when the petition for its insolvency was filed; and on the 13th of June, when the corporation appeared in answer to the order to show cause, the court had acquired entire jurisdiction of the subject matter of the petition, and of the insolvent. The jurisdiction thus acquired gave to the court full authority to carry out the provisions of the Insolvent Act, and to have the estate of the insolvent distributed to the creditors under its supervision and control, and if the court had proceeded in the matter and had distributed the estate without interference on the part of the court which had jurisdiction of the proceedings for the dissolution of the corporation, it would not be contended that its orders and judgment would not be conclusive.

The Insolvent Act does not exclude any corporation from its provisions; but its declaration that " the provisions of this act shall apply to corporations" includes corporations organized for the purpose of insurance, as well as others. It is contended, however, by the respondents herein that the act, so far as it was originally

applicable to insurance corporations, has been superseded by the provisions of section 601 of the Political Code, in which provision is made for the dissolution of such corporations. It is not claimed that there is any express declaration in the section to that effect, or that there has been an express repeal of these provisions of the Insolvent Act; but it is urged that the provisions of the two statutes are inconsistent, and that, inasmuch as section 601 was amended in 1887, and is the latest legislative declaration, it must prevail over the Insolvent Act of 1880. The argument from the relative dates at which the several statutes were enacted is not entitled to much consideration, for the reason that the substance of section 601, and all that can be accomplished under its provisions, was on the statute books for many years prior to the enactment of the Insolvent Act of 1880—the only change in the section made in 1887 being to limit the time within which the attorney general should institute proceedings thereunder. If any argument is to be drawn from the respective dates of their passage it would be that if there is any inconsistency between the two statutes the Insolvency Act would prevail over the other. We are, however, of the opinion that there is nothing inconsistent between the two statutes, and that each is operative over the principal subject for which it was enacted; that the provisions of the Insolvent Act embrace insurance corporations, and that the provisions of section 601 of the Political Code are intended to secure merely the dissolution of a delinquent insurance corporation, and do not confer upon the court which decrees the dissolution the power to distribute its effects to the stockholders and creditors.

The first legislation in this state providing for a supervisory control of the business of insurance was the act of March 26, 1868 (Stats. 1868, 336). By that act the office of insurance commissioner was created, whose duty it was to examine into the financial condition of all persons and corporations who might desire to trans-

act the business of insurance within this state, and to issue to such as may be found to be in a solvent condition, within the meaning of that act, a certificate of authority to transact such business, and making it unlawful for any corporation to transact such business without first receiving such certificate of authority. This act was re-enacted in 1872, in sections 594 et seq. of the Political Code, and many of these sections have since, from time to time, been amended. The "insolvency" of an insurance corporation which will authorize the commissioner to revoke his certificate of authority, or to require it to refrain from doing business until it shall have repaired its capital, is not the ordinary commercial insolvency, but is such as is defined by the statute (*Palache* v. *Pacific Ins. Co.*, 42 Cal. 418), and, so far as applicable to the petitioner herein, is defined in section 602 of the Political Code as follows: "Wherever provision for the liabilities of any person engaged in the business of fire insurance in this state for losses reported, expenses, taxes, and reinsurance of all outstanding risks, estimated at fifty per cent of the premiums received and receivable on all fire risks, would so far impair the capital stock paid in as to reduce the same below two hundred thousand dollars, or below seventy-five per cent of said capital stock paid in, such person is insolvent." (Stats. of 1887, 19.) By section 600, whenever the insurance commissioner ascertains that any person engaged in the insurance business is insolvent, "within the meaning of this chapter," he must revoke the certificate granted, and require the person to repair the capital thereof within such period as he may designate; and by section 601 it is provided that in case, upon such requisition, the deficiency of capital is not made up as required by the provisions of the Political Code, the commissioner must communicate the fact to the attorney general, and that officer "must, within twenty days after receiving such communication, commence an action in the name of the people of this state in the superior court of the

county where the person in question is located, or has his principal office, against such person, and apply for an order requiring cause to be shown why the business should not be closed; and the court must thereupon hear the allegations and proofs of the respective parties as in other cases. If it appears to the satisfaction of the court that such person is insolvent, or that the interests of the public so require, the court must decree a dissolution of such corporation, and the winding up of its affairs, and the distribution of the effects of such person; but otherwise the court must enter a decree annulling the act of the commissioner in the premises, and authorizing such person to resume business.

These provisions of the Political Code are of a governmental character, and are enacted by the legislature in the discharge of its functions to provide for the welfare of the people, in affording security to them in such insurance as they may choose to effect upon their property, and to protect them against fraudulent schemes of insurance, or deception by plausible inducements which may be held out for their patronage. The legislature, in authorizing a corporation to be formed for the purposes of insurance, has attached to it, as a condition of its continued existence, that it shall comply with the requirements of these sections, and has fixed the forfeiture of its charter as a penalty for noncompliance. Its power to prescribe such conditions, as well as its right to revoke the charter or to dissolve the corporation, is unquestioned, and it may avail itself of such mode in the exercise of the power as it may choose. Its visitatorial power over the corporations of its creation is as extensive as its power to authorize their creation, and it may exercise this power directly by itself, or it may declare a dissolution of the corporation as the result which shall follow a judicial investigation. In whatever mode the power may be exercised, it is but the administration of the legislative power of the state. In sections 600 to 602 of the Political Code the legislature has conferred the initiatory step for this visitatorial

power upon the insurance commissioner, and has de-
clared that if upon a judicial investigation thereon it
shall be ascertained that his acts have been authorized,
and that the corporation has failed to comply with his
requirements, a dissolution shall follow.    These sections
are found in the chapter of the Political Code entitled
" Executive Officers," and the object of the action au-
thorized by section 601 is to make effective the acts of
the insurance commissioner in revoking the certificate
of authority by dissolving the corporation for its failure
to comply with such requirement.

The jurisdiction of the superior court to decree a dis-
solution of any corporation exists only by virtue of stat-
utory authority.    It does not possess this authority by
virtue of its inherent general jurisdiction in equity
(*Neall* v. *Hill*, 16 Cal. 145; *French Bank Case*, 53 Cal.
495; *Havemeyer* v. *Superior Court*, 84 Cal. 327), either
at the suit of an individual (*Folger* v. *Col. Ins. Co.*, 99
Mass. 267), or at the suit of the state (*Attorney General*
v. *Utica Ins. Co.*, 2 Johns Ch., 370), and, as its jurisdic-
tion is derived from the statute, it is limited by the
provisions of the statute, both as to the conditions under
which it may be invoked, and the extent of the judg-
ment which it may make in the exercise of this juris-
diction.    (*Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch.,
84.)    There is no provision in section 601 by which the
court is authorized to appoint a receiver, or to assume
control or management of the estate of the corporation,
and under that section the court has no authority to
make any order affecting the corporation or its property
until after it has heard the allegations and proofs of the
respective parties.    When the attorney general com-
mences the action, the only order which the court is
authorized to make is one requiring the corporation to
show cause why its business should not be closed.    Until
the return day of this order the court can neither en-
join the corporation from doing business, nor can it
disturb it in the possession of its estate; and if upon the
hearing at the return day it shall not be shown to the

satisfaction of the court that the corporation is insolvent, within the meaning of the statute, its only function is to annul the act of the commissioner. The provision in the section that the court must also decree a winding up of the affairs of the corporation and a distribution of its effects, does not declare that such winding up and distribution shall be under the direction of the court which has decreed the dissolution, or, indeed, under the direction of any court, but merely that its affairs shall be wound up and its effects distributed. In *Attorney General* v. *Bank of Niagara*, Hopk. Ch. 354, the chancellor held that, even though proceedings were pending at law for the dissolution of a corporation, he had no authority to aid them by an injunction, for the reason that such action would be to prejudge the question which was yet to be determined in the court of law. *In the Matter of Boynton Saw and File Co.*, 34 Hun, 369, it was held that proceedings for the dissolution of a corporation were purely statutory, and that the only power or authority which the court possessed was such as had been conferred by the statute, and that, as the statute gave no authority to appoint a temporary receiver, such appointment was void, saying: " The statute does not give the court control over the corporate property until the decision is made upon the return to the order to show cause." (See also *In re Waterbury*, 8 Paige, 380; *Ward* v. *Farwell*, 97 Ill. 615; *People* v. *Seneca Lake Grape and Wine Co.*, 52 Hun, 178.)

Section 400 of the Civil Code provides that upon the dissolution of a corporation, "unless other persons are appointed by the court, the directors or managers of the affairs of such corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle the affairs of the corporation." The power of the court to appoint other persons which is implied in this section does not authorize the court to take upon itself the power to settle its affairs, or to appoint a receiver for that purpose. It was held in the

Havemeyer case that the court in which proceedings had been taken for a dissolution of the corporation did not by virtue of its judgment for a dissolution have jurisdiction to appoint a receiver to wind up the affairs of the dissolved corporation. It was said in that case: "When a corporation is dissolved, its property vests in its stockholders, subject only to the claims of creditors, and is thereafter held upon the same tenure and subject to the same conditions as similar property owned by other natural persons. What others may do, they may do. They owe no further or higher duty to the public and are under no other restraints" (p. 378.) The proceedings in that case were under section 803 of the Code of Civil Procedure, but it was held that the provisions of section 400 of the Civil Code apply in all cases of dissolution, whether voluntary or involuntary, and the reasoning therein and the conclusions reached are applicable to the present proceeding. Each is a proceeding on the part of the state for the purpose of revoking the franchise that had been granted to exercise corporate powers, and the function of the state as well as its interest in the disposition of the property of the corporation is no greater in the one case than in the other. The power of a court to appoint any persons in the place of those who are directors of the corporation at the time of its dissolution is given in section 565 of the Code of Civil Procedure, and the authority given therein is the measure of its power. That section gives to the superior court of the county in which the corporation carries on its business authority to appoint one or more persons to be receivers or trustees of the corporation upon its dissolution, "on application of any creditor of the corporation or of any stockholder or member thereof," and unless such application is made the court has no authority to make the appointment. Its jurisdiction to make such appointment rests upon an application therefor by either a creditor or a stockholder, and can neither be invoked at the instance of a stranger, nor assumed by the court of its own motion.

(*Bangs* v. *McIntosh*, 23 Barb. 600.) If there should
chance to be no directors in office at the time of the dis-
solution, or if for any reason the directors of the corpo-
ration ought not to be intrusted with the subsequent
control of its affairs, the court can appoint others in
their place (Civ. Code, sec. 2289), but the persons so
appointed become trustees in the place of the directors,
and with the same powers and responsibility that are
conferred by section 400 upon the directors in office at
the time of its dissolution.

The only parties to the present action are the people
of the state and the delinquent corporation. When the
object for which the action is authorized—the revocation
by the state of the franchise which it conferred—has
been accomplished, there would naturally be no further
action for the court to perform. The state has no
interest in either the assets of the corporation or its
debts, and when it has secured the dissolution of the
corporation its functions in the action have ceased.
(See *People* v. *Buffalo Stone Co.*, 131 N. Y. 144.) The
statute does not authorize either the attorney general or
the insurance commissioner to exercise any further
direction or control in the affairs of the dissolved cor-
poration, or in the distribution of its assets; nor has
the state or any of its officers any interest in having
the creditors receive from the assets of the corporation
the amounts in which it may be indebted to them; and
it is no concern of the state how or when the assets of
the corporation shall be divided between the stock-
holders. Notwithstanding the decree of dissolution, the
property still belongs to the stockholders, and the right
to wind up the affairs of the corporation and to distrib-
ute its effects is given by the statute to the directors,
and they can be deprived of this control over the prop-
erty of the corporation only at the instigation of a
creditor or stockholder.

It must be considered that the insolvency, upon
which the dissolution of the corporation is authorized
under section 601, is a statutory, and not an actual,

insolvency, and as the liabilities of an insurance corporation are contingent upon a future event, rather than an existing indebtedness, under the watchfulness which the commissioner is required to exercise over the corporation, it would rarely happen that an insurance corporation which was in actual business would be actually insolvent, except some great conflagration had exhausted its resources; and it is also to be observed that in the complaint in the present instance there is no charge of actual insolvency, other than the impairment of the capital stock of the corporation, nor is there any reference therein to any of the creditors of the corporation, except as it may be inferred from the recital in the finding above quoted. If in fact the corporation is only technically insolvent, that is, insolvent within the definition given by the statute, no reason can be assigned why the court should interfere with the management of its business. The property of the corporation still belongs to the stockholders, and it would require an express statutory declaration to that effect to authorize a court in a proceeding wherein the only parties are without any interest in this property, to assume to itself, or to take from them, the control and management thereof. They have the same right to the control of their property as has any other individual, and the court is not authorized to take under its protection the interests of those who do not seek to invoke its aid for themselves.

When the appeal from the judgment was perfected its execution was suspended until the determination of the appeal (*Havemeyer* v. *Superior Court*, 84 Cal. 327), and while that appeal is pending the court cannot carry into execution that part of its judgment authorizing the appointment of a receiver. The effect of an appeal from a judgment when the proceedings thereon are stayed, is to preserve the rights of the parties to the controversy in the same condition as they were prior to the entry of the judgment. (*Dewey* v. *Superior Court*, 81 Cal. 64; *Dulin* v. *Pacific Wood and Coal Co.*, 98 Cal. 304.)

As the court could not take the estate of the corporation into its custody, or exercise any control over it before the judgment of dissolution, it could have no property under its control which it was authorized to " preserve" pending the appeal from its judgment; but, if it could appoint a receiver to take the appellant's property from his custody and keep it in his possession during the pendency of the appeal, it would exercise an authority after the judgment greater than it possessed before its entry, and the effect of the appeal would thus be destroyed.    For this reason the court had no jurisdiction to appoint Van Reynegom as receiver of the effects of the corporation "during the pendency of the appeal."

The transfer of the proceedings in insolvency after the order of adjudication had been made, from the department in which they had been pending to the department in which the action for dissolution was pending, did not confer upon the court any greater jurisdiction in the latter matter than it previously had had. Each of these proceedings was statutory in its character, and was to be conducted in the manner and within the limits prescribed by the statute under which it had been instituted.

The application of the petitioner must be granted and the writ of prohibition made peremptory.

McFARLAND, J., DE HAVEN, J., FITZGERALD, J., and BEATTY, C. J., concurred.