## HENRIOD et al. v. EAST TINTIC DEVELOPMENT CO. et al.

No. 3141. Decided May 4, 1918. (173 Pac. 134.)

1. EXCEPTIONS, BILL OF PREPARATION. While, under Comp. Laws 1907, section 3286, district court, in settling and allowing bill of exceptions, may determine what it should contain, a party need not incorporate all of the evidence, if not necessary to a full understanding of the questions raised, nor need the evidence be in form of questions and answers. (Page 247.)

2. EXCEPTIONS, BILL OF—PRESERVATION OF EXCEPTIONS. Though plaintiffs were erroneously denied bill of exceptions, when the judge

refused to allow it unless all the evidence, some of which was immaterial, was included, they could have no remedy, in the absence of compliance with Comp. Laws 1907, section 3289, permitting application to the Supreme Court to prove a proposed bill of exceptions. (Page 248.)

3. APPEAL AND ERROR—REVIEW. Erroneous ruling on matter to be incorporated in bill of exceptions cannot affect the judgment unless it is vulnerable on other grounds. (Page 248.)

4. APPEAL AND ERROR—PRESUMPTIONS. In the absence of bill of exceptions containing the evidence, the assignment of error that the court's findings are not supported by the evidence cannot be reviewed, since in such case the presumption is that the court's findings are in strict conformity with the evidence. (Page 249.)

5. CORPORATIONS—WINDING UP BUSINESS—CONFESSING JUDGMENT. In view of Laws 1909, c. 106, section 5, providing that, in case of forfeiture of corporate charter, its property and assets are to be held in trust, and Laws 1913, c. 10, authorizing, in such cases, continuance of business for purpose of winding up the affairs, directors did not act illegally or beyond powers, after forfeiture, in confessing a judgment on an indebtedness, which the corporation could not pay. (Page 249.)

Appeal from District Court of Utah County, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by Gus Henriod and others against the East Tintic Development Company and others.

Judgment for defendants. Plaintiffs appeal.

AFFIRMED.

*N. W. Sonnedecker* and *Edward Pike* for appellants.

*W. I. Snyder* for respondents.

FRICK, C. J.

The plaintiffs, as stockholders of the East Tintic Development Company, a corporation, hereinafter called company, brought this action against said company and against the

board of directors, composed of C. M. Richards, R. M. Kellogg, W. F. Giles, Thomas Beesley, and Harvey Cluff, to have certain acts of said board of directors set aside and annulled, and to have a receiver appointed to take possession of the property of said company, and to wind up its affairs as hereinafter stated. It is not necessary to refer to the pleadings.

The first assignment relates to the refusal of the district court to settle and allow plaintiff's proposed bill of exceptions. The facts relating to that assignment, in substance, are as follows: After the trial of the cause the court found the issues in favor of defendants, and plaintiffs' attorneys, intending to appeal the case to this court, prepared and served their proposed bill of exceptions on counsel representing the defendants. In view that plaintiffs' counsel intended merely to present certain questions for review, they did not incorporate all of the evidence produced at the trial into the proposed bill of exceptions, but incorporated only a statement in narrative form of such parts of the evidence as they desired to have settled in their bill. Counsel for defendants then moved to strike plaintiffs' proposed bill of exceptions, and demanded that the plaintiffs "insert in lieu thereof a full, true, and certified transcript of the reporter's notes * * * of all other evidence given in the case." In other words, defendants' counsel demanded that plaintiffs incorporate into their proposed bill of exceptions all of the evidence produced at the trial. The district court sustained the motion, and refused to settle and allow plaintiffs' proposed bill of exceptions, and, as it appears, refused to settle any bill unless all of the evidence that was produced at the trial was incorporated into the proposed bill. Plaintiffs' counsel refused to comply with the court's ruling, and now insist that the court erred in sustaining defendants' motion.

While it is true that it is the province of the district court in settling and allowing a bill of exceptions to determine what it should contain, yet it is also true that a party who desires to present only certain questions for review in this court need not incorporate a full transcript of all of the evidence produced at the trial, but he may present

only so much of the evidence as will be necessary to a full understanding and illustration of the question presented for review. Nor is it always necessary to present the evidence in the form of questions and answers as it was taken down by the stenographer. No doubt the district court not only may but should require the party preparing a bill of exceptions to incorporate all of the evidence relating to the question which he seeks to have reviewed into his proposed bill. If that be not done, it may prevent this court from reviewing the question unless it be one which can be reviewed upon the judgment roll alone without the evidence. A party is not required, however, to incorporate any evidence into his proposed bill which is not necessary or material to the question presented for review. This is clearly the purpose of our statute. Comp. Laws 1907, section 3286, provides:

"It is the duty of the judge, in settling the bill, to strike out of it all redundant and useless matter, so that the exceptions may be presented as briefly as possible."

The aggrieved party may thus present his proposed bill of exceptions, with so much of the evidence as he may deem necessary and material, and if the district judge refuses to settle and allow the proposed bill he has his remedy. Section 3289 specially provides that if the district judge, in any case, refuses to allow exceptions in accordance with the facts, the party desiring to have the bill of exceptions may apply to this court, and if he "proves" his proposed bill this court, or one of the justices, may settle it.

In this case plaintiffs remained silent, however, and did nothing more respecting their proposed bill of exceptions. Their silence and inaction, therefore, resulted in        2, 3 a failure to obtain any bill of exceptions, and hence the case is here upon the judgment roll alone. All we can do in that regard, therefore, is just what we have done, namely, indicate our views respecting the plaintiffs' rights in the premises. That, however, will not aid the plaintiffs in obtaining a bill of exceptions. Nor can the court's ruling in that regard affect the judgment unless it is vulnerable on other grounds.

For the reasons just stated, the assignment that the court's

findings are not supported by the evidence can, therefore, not be reviewed. In the absence of the evidence,    4, 5
the presumption is that the court's findings are in strict
conformity with the evidence produced at the trial. We
therefore can review only such questions of law as arise upon
the pleadings, the findings of fact, and conclusions of law.

But one question is thus presented. Upon that question the
salient facts that appear from the pleadings and findings, in
substance, are as follows: The company was incorporated as
a mining corporation with an authorized capital stock of
1,000,000 shares, all of which was fully paid up. The company owned some mining property in this state, and had
spent considerable sums of money in purchasing machinery
and supplies and in developing said mining property. The
company, not having ready cash to meet its obligations, borrowed certain sums of money from some of its stockholders,
and secured the payment thereof by giving a mortgage on its
mining properties and improvements. The company's mine
did, however, not produce sufficient to pay its debts; and
therefore the directors, in 1913, sought to raise funds by
levying an assessment of one cent per share on the authorized
capital stock, as provided by our statute. The stockholders,
however, preferred to forfeit their shares of stock rather than
to pay the assessment, and all of the shares of stock, except
55,682, were thus forfeited to the company. The amount that
was realized from the assessment was therefore comparatively
small and wholly insufficient to pay off the indebtedness. The
directors then entered into an option agreement to sell the
property of the company, but, after the party obtaining the
option had paid $1,500 thereon, he refused to exercise his
rights under the option, and the company was again left without means to pay off its indebtedness.

The affairs of the company were still further complicated
by its failure to pay the state corporation tax for the year
1914. By reason of that fact its charter was forfeited in
April, 1915, and thereafter it could no longer legally carry on
the business for which it was organized. The indebtedness,
however, remained unpaid, and the mortgagees were threaten-

ing to foreclose the mortgage, which constituted a lien upon all of the company's property. Notwithstanding the fact that the charter had been forfeited, however, the board of directors authorized a confession of judgment on the indebtedness aforesaid, which at that time, with interest and costs, amounted to the sum of $3,873.83. Judgment by confession for that amount was accordingly entered in the district court of Utah county, and the mortgage was foreclosed, and the property of the company ordered sold to satisfy said indebtedness. A sale was accordingly had, and the proceeds thereof applied in payment of the debts. The board of directors thereafter sold the company's equity of redemption for the sum of $1,000, paid off all the outstanding indebtedness of the company, and distributed what remained in their hands among the stockholders, who had not forfeited their shares of stock. The affairs of the company were thus all wound up and it ceased to exist. The plaintiffs, who owned 12,500 shares of the capital stock of said company, brought this action to set aside and annul all and singular the acts of the directors which were taken after the charter was forfeited, and also to annul and set aside the judgment entered by confession, and the order foreclosing the mortgage and the sale of the mortgaged property, and to have a receiver appointed to take charge of all of the said property, and to wind up the affairs of the company as though nothing had been done after the charter was forfeited.

Plaintiffs contend that immediately upon the forfeiture of the charter the corporation ceased to exist, and therefore the board of directors also ceased to exist as such, and that, therefore, all that was done by the board after the charter was forfeited, as outlined above, was void and of no force or effect. That is, plaintiffs contend that all the board of directors were empowered to do was to hold the property in trust. The property of the company, it is insisted, has therefore not been disposed of, and is still held in trust by the board of directors for the benefit of the company and its creditors and stockholders. The question therefore is, what effect, if any, can be given to the acts of the board of directors, in winding

up the affairs of the company, after the charter was forfeited for the nonpayment of the corporation tax?

Nothing is made to appear that the indebtedness of the company was not incurred in good faith or that the board of directors were guilty of fraud or of bad faith in any respect. It is, however, insisted that the acts of the board of directors, in winding up the affairs of the company, not only were irregular, but, for the reasons already stated, were absolutely void. In chapter 106, Laws Utah 1909, section 5, p. 228, it is, among other things provided:

"In case the forfeiture of the charter and of the right to transact business thereunder, all the property and assets of the * * * domestic corporations shall be held in trust by the directors of such corporation as in case of insolvent corporations, and the same proceeding may be had with respect thereto as is applicable to insolvent corporations."

The foregoing provision was thereafter supplemented by chapter 10, Laws Utah 1913, p. 14. It is there provided:

"Any corporation, organized under the laws of the territory or state of Utah, whose franchise has heretofore expired or may hereafter expire by limitation or by forfeiture, may nevertheless continue for the purpose of winding up its affairs; and to effect this purpose may sell, or otherwise dispose of, real and personal property, sue and be sued, contract, and exercise all other incidental and necessary powers."

The provision we have quoted from the Laws of 1909 and the one quoted from the Laws of 1913 must therefore be considered and applied together. If that be done, we can see no reason why, in the absence of fraud or collusion, the acts of the board of directors in this case were not justified. While perhaps the acts of the board in some respects were somewhat irregular, yet, in view of the statute, they were neither illegal nor void. In our judgment the statute clearly contemplates that the board of directors shall wind up the affairs of the corporation in case its charter and its right to conduct business are forfeited. That, it seems to us, is the manifest purpose of the statute. Such is also the holding of the courts under statutes similar to ours. In *Turney* v. *Mor-*

*rissey,* 22 Cal. App. 271, 134 Pac. 335, the decision is correctly reflected in the second headnote, which we quote:

"Upon the forfeiture of the charter of a corporation for failure to pay its license tax or fee, the directors \* \* \* become at once and ipso facto trustees of the corporation, and its stockholders for the purpose of closing up the affairs of the corporation, and, after payment of the debts of the corporation and the expenses of liquidation, to distribute the remaining assets of the corporation among those entitled thereto."

The same doctrine is laid down in *State I. & I. Co.* v. *San Francisco,* 101 Cal. 135–147, 35 Pac. 549, *and in Farrell* v. *Evans,* 25 Mont. 444, 65 Pac. 714. In both of those cases the statute passed on was much less specific than our own. It was nevertheless held that, in the absence of fraud or collusion, the board of directors was authorized to wind up the affairs of the company, and that a receiver should not be appointed for that purpose. No doubt if a creditor or stockholder came into court alleging fraud or misconduct on the part of the board of directors, the court would take cognizance of the matter, but even then the affairs of the corporation might be wound up by the directors under the direction and supervision of the court without a receiver. As a matter of course, if the court found the directors to be improper persons to have charge of the affairs of the company and to be trusted, it might appoint a receiver to wind up the corporate affairs. No receiver is, however, necessary where, as here, there is no showing of fraud or of bad faith, and where no injury has resulted to any one.

The judgment therefore should be, and it accordingly is, affirmed, at appellants' costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.