[L. A. No. 18104.   In Bank.   Feb. 28, 1942.]

COUNTY OF LOS ANGELES, Appellant, v. AZILE M. FRISBIE, as Executrix, etc., Respondent.

J. H. O'Connor, County Counsel, and Gerald G. Kelly and L. K. Vobayda, Deputy County Counsel, for Appellant.

Holbrook & Tarr, Leslie R. Tarr and Freda B. Walbrecht for Respondent.

CURTIS, J.—By this action the county of Los Angeles seeks to recover from the estate of Mary A. Stoner, deceased, the sum of $2,236.57, together with interest thereon, for aid, hospital care, medical treatment and supplies furnished by it to one Fay Pheysey, an adult daughter of decedent, between February 26, 1937, and April 28, 1939. Mary A. Stoner died a resident of Los Angeles County on April 28, 1939, and thereafter, upon admission of her will to probate, letters testamentary were issued to Azile M. Frisbie, defendant herein. Following the filing by such executrix of an inventory and appraisement of such estate with the probate court, the county of Los Angeles presented its amended creditor's claim in the aforementioned amount. Upon rejection of its claim, the county commenced this action for reimbursement from the decedent's estate. Defendant's demurrer to the amended complaint was by the court sustained without leave to amend, following plaintiff's refusal to plead further. From the judgment of dismissal thereupon entered plaintiff county prosecutes this appeal.

The determination of this appeal involves the construction of sections 2576, 2577 and 2578 of the Welfare and Institutions Code. Material to the consideration of this issue of statutory interpretation are the following allegations appearing in the amended complaint: that the county of Los Angeles rendered charity aid to Fay Pheysey, the indigent adult daughter of decedent, in the sum aforementioned; that all such relief was furnished during the lifetime of the mother; and that during the entire period over which such aid was extended the mother was possessed of sufficient financial ability to reimburse the county in full therefor. The trial court sustained defendant's contentions as advanced in her demurrer, which primarily challenged the sufficiency of plain-

tiff's amended complaint to state a cause of action because there was not alleged the filing of a petition for the judicial determination of liability pursuant to the terms of section 2578 of the Welfare and Institutions Code.

The sections of the Welfare and Institutions Code basically involved in the present controversy are the following:

Section 2576: "If any indigent has living within this State a spouse, parent, or adult child, and such kindred or any of them, or any group of them has sufficient financial ability to support the indigent, he shall not be eligible for aid under this chapter, except such emergency aid as may be extended hereunder pending a determination of responsibility for his support. Upon failure of such kindred to support the indigent, the county may extend aid, and such kindred in the order above named and to the extent of their ability shall reimburse the county for the support of the indigent by paying to the county the sums per month or per day fixed by the board of supervisors for such aid. In any case where such kindred are unable to pay the entire charge for such support, they shall reimburse the county to such an extent as may be determined under the provisions of this section.

"The board of supervisors shall, in the case of aid granted by institutional care, fix a reasonable charge therefor, which shall be the measure of reimbursement to the county, and the existence of the order fixing the charge shall constitute prima facie evidence of its reasonableness."

Section 2577: "Upon failure of the kindred, referred to in section 2576, to perform their duty to support the indigent, the board of supervisors shall request the district attorney of the county to proceed against such kindred in the order of their responsibility for support. Upon such request the district attorney shall promptly commence and prosecute proceedings for the ascertainment and enforcement of the liability and responsibility of the kindred."

Section 2578: "Such proceedings shall be begun by filing in the name of the county a petition verified in the manner of a complaint praying that the responsibility and liability of the named kindred be ascertained, and that an order be made accordingly. The provisions of Titles I to IX, inclusive, of Part II of the Code of Civil Procedure shall apply to the proceedings in such action and the court shall therein determine the liability, if any, of each of the kindred for such

support. The court shall, in such action, ascertain the finan-
cial ability of the defendants and each of them, and unless it
finds that a defendant is unable to pay any sum for support,
either because of lack of sufficient funds or because such pay-
ment would result in the probability of the defendant be-
coming at some future time a public charge, the court shall
order each defendant to pay to the county a proper pro-
portion, if any, of his liability for the support of the indigent.

"If any relative or group of relatives has sufficient financial
ability to support the indigent no relative beyond him or them
in the order named in section 2576 shall be ordered to pay
any portion of the support. The order of the court shall
specify that a given sum shall be payable monthly in advance
to the board of supervisors or its designated social agency
for the entire or partial maintenance of the defendant's indi-
gent relative in accordance with the defendant's financial
ability."

Appellant county contends that the foregoing sections give
it two separate causes of action, to-wit:  (1) an action against
a responsible relative for *reimbursement* for charity aid ren-
dered by the county to the indigent, and (2) a proceeding
against the legally responsible kindred to obtain court orders
for *future monthly support payments* by said kindred to the
county for the aid which the county will have to furnish the
indigent.  In other words, appellant county urges that the
two methods of collection procedure available to it under
these code provisions are wholly separate and distinct: that
section 2576 contemplates an action to recover *by way of
reimbursement* for moneys expended for charity aid, and that
sections 2577-2578 provide an independent mode of proceed-
ing by the filing of a petition to obtain a court order directing
future periodical payments by the liable kindred to the county
to be disbursed by the latter.  On the other hand, respondent
argues that these above-quoted code sections permit at the
outset but a single type of proceeding, one summary in char-
acter for the purpose of securing a court order fixing the
liability of the kindred for the support of the indigent rela-
tive, and that it is only *after* the failure of the kindred to
comply with the terms of the order directing the payment of
specified sums that there accrues to the county a cause of
action for the recovery of these amounts.  Thus, it is respon-
dent's position that the prior adjudication of the existence
and extent of decedent's liability is an essential prerequisite

to the county's maintenance of the present action. Admittedly, the aid rendered by the county to the decedent's daughter was not of an "emergency character," but was of an ordinary nature consonant with the support, institutional care and medical treatment furnished during the period above mentioned.

Preliminary to our consideration of the questions raised by the parties relative to the meaning of the particular language employed in these code provisions, it is pertinent to observe that the object of all construction of statutes is to ascertain and give effect to the intention of the legislature. (*State* v. *Conkling*, 19 Cal. 501, 512.) In the analysis of statutes for the purpose of finding the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments. (*Palache* v. *Pacific Ins. Co.*, 42 Cal. 418, 430.) While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language. (*In re Haines*, 195 Cal. 605, 612 [234 Pac. 883].) Hence, in construing a remedial statute, like a law concerning the rendition of charitable aid to indigents and recovery therefor, reason must have its just proportion, and in interpreting the expressions employed, the court is free to study the history and purpose of the enactment and the previous state of the legislation on the subject, as well as other statutes *in pari materia* and the benefits sought to be provided. (*People* v. *Earl*, 19 Cal. App. 69, 71-72 [124 Pac. 887].)

It is made the duty of every county in this state to "relieve and support" all indigent persons lawfully resident therein, "when such persons are not supported and relieved by their relatives" or by some other means. (Sec. 2500, Welfare and Institutions Code; based on Stats. 1901, ch. CCX, sec. 1, p. 636; Stats. 1933, ch. 761, sec. 1, p. 2005.) The obligation imposed by this statute is a mandatory duty. (*San Francisco* v. *Collins*, 216 Cal. 187, 190 [13 Pac. (2d) 912].)

By section 2576 the legislature has qualified the indigent's right to compel or mandamus the county to render aid by declaring in effect that if such person has a responsible relative with sufficient ability to support him, he shall not be

eligible for aid as a matter of absolute right. The mere fact that the indigent has legally liable kindred able to maintain him does not preclude him from obtaining relief, for the county's mandatory duty (sec. 2500, *supra*) is not limited to cases where the indigent is without a responsible relative with ability to support him, but is restricted in application only to those cases where the responsible relative is *actually* supporting and relieving the indigent. To hold, as respondent urges, that any aid, other than that of an emergency character, rendered by the county prior to a judicial determination of the kindred's responsibility for the indigent relative's support is without statutory authority and a voluntary act on the basis of a gratuity, is to place undue emphasis upon the first sentence of section 2576 and to disregard the balance of the code provision. The opening words of the second sentence significantly read: "Upon failure of such kindred to *support* the indigent, *the county may extend aid . . .*" (Emphasis added.) This language, permissive in character and without reference to court order, plainly gives the county the discretionary right to advance such aid, that is, regular support, in the event the responsible kindred neglect to discharge the duty impressed by statute. ▮▮ Substantiating the county's claim to recovery for the relief so extended is the remainder of the second sentence of section 2576: "and such kindred in the order above named and to the extent of their ability shall *reimburse* the county *for the support* of the indigent by paying to the county the sums per month or per day fixed by the board of supervisors for such aid." (Emphasis added.) The primary and ordinary meaning of the word "reimburse" is "to pay back, to make restoration, to repay that expended." (Webster's New International Dictionary, Second Edition; Funk & Wagnall's Standard Dictionary.) The actual amount due depends upon the sums determined by the board of supervisors to be representative of the county's expense for the relief granted. This section then continues with a third sentence declaring that where such kindred, remiss in their obligation to support the indigent, "are unable to pay the entire charge for *such support* [the support by the county], they shall *reimburse* the county to such an extent as may be determined under the provisions of *this section.*" (Emphasis added.) Thus, the amount of partial recovery for support furnished the indigent is governed by the ability of the responsible kindred to reimburse the county. The

fourth and final sentence of this section then treats the question of recovery for institutional care extended, by prescribing as follows: "The board of supervisors shall, in the case of aid granted by institutional care, fix a reasonable charge therefor, which shall be the *measure of reimbursement* to the county . . ." (Emphasis added.)

Section 2577 provides that upon failure of the kindred, as specified in section 2576, to perform their duty to support their indigent relative, the district attorney shall, upon request of the board of supervisors, "promptly commence and prosecute proceedings for the ascertainment and enforcement of the liability and responsibility of the kindred." This language envisages and authorizes the county's pursuit of a distinct type of procedure to compel future contributions by responsible kindred who neglect to discharge their legal obligation, as created by statute (section 2576, *supra*). The precise limits and fundamental aim of the prescribed action is outlined in section 2578, which, after declaring that such proceedings shall take the form of a petition praying for the ascertainment of the responsibility and liability of the specified kindred of the indigent, provides that the court shall "ascertain the financial ability of the defendants and . . . the court shall order each defendant to pay to the county a proper proportion, if any, of his liability for the support of the indigent." Thus, the extent of the kindred's liability is declared to rest upon the court's finding as to financial ability. Section 2579 then provides for proceedings to be taken in the event of such kindred's non-compliance with the court's order directing payments for the maintenance of the indigent relative. Undoubtedly, the express terms of these three sections establish a distinct right and furnish a complete remedy for its enforcement, but there still remains the question of whether the availability of this method of collection procedure negatives the propriety of appellant county's prosecution of the instant action in reliance upon the language of section 2576. To determine the intent of the legislature in this respect, the provisions of all of these code sections must be read and considered together.

In arriving at the proper construction of these code provisions relative to the responsibility of kindred for support of their indigent relatives, certain cardinal principles of statutory interpretation must be observed. A statute should always be so construed, if reasonably possible, as to give force

and effect to every expression used by the legislature. (*Brainard* v. *Brainard,* 17 Cal. App. (2d) 520 [62 Pac. (2d) 403]; 23 Cal. Jur. 780, sec. 157.) ▮ Excepting when clearly otherwise intended or indicated, words in a statute should be given their ordinary meaning and receive a sensible construction in accord with the commonly understood meaning thereof. (*Universal Pictures Corp.* v. *Superior Court,* 9 Cal. App. (2d) 490 [50 Pac. (2d) 500].) Section 13 of the Civil Code provides: "Words and phrases are construed according to the context and the approved usage of the language; . . ."

▮ Tested by these canons of statutory construction, it is manifest that the code provisions here subject of analysis extend to the county alternative methods of collection procedure. Section 2576, after its introductory direction pertaining to the eligibility of an indigent for relief, gives the county an independent cause of action against the responsible kindred for the recovery of money previously expended by it for aid furnished the indigent relative. Three separate times the legislature has so demonstrated its intent in this section: twice by the use of the term "reimburse" and once by the use of the term "reimbursement." As so employed, these words, referable to the recoupment of sums already paid, indicate the legislature's intention by this enactment to provide the county with authority to prosecute an ordinary cause of action for the recovery of money and negative the requirement of a judicial decree to determine the measure of the debt as the basis for the maintenance of such action. Sections 2577 and 2578 outline a wholly different type of procedure, whereby the county is permitted to file a petition, not to reimburse itself for money already expended, but to compel the responsible kindred to contribute to the *future* support of the indigent who is not eligible for county relief, other than that of an emergency character, as a matter of right. That these last-mentioned code provisions contemplate a proceeding entirely independent of the action for reimbursement, subject of section 2576, is indicated by the fact that they refer to section 2576 only in one respect, that is, the order in which the liability of the kindred is fixed by the latter provision. By virtue of sections 2577 and 2578 the county may, prior to rendering non-emergency charity aid to an applicant indigent who has responsible kindred pecuniarily able to maintain him, commence a proceeding for a judicial declaration of the *extent* of the kindred's liability in

accordance with the court's finding as to financial ability and for an order directing the responsible relatives to discharge their statutory duty of support of the indigent by the payment in advance of certain fixed sums to the county for that purpose. Such adjudication, of course, would have only *prospective* operative force.

The above construction of these code provisions is in complete accord with the system of county aid established by the relief statutes of this state. The theory underlying the extension of such aid to an indigent has always been that he is without means of support either from his own efforts or those of responsible kindred, and that when the latter are available, they are primarily liable for the welfare of the indigent relation. In accordance with this basic principle, the original relief act of 1901 (Stats. 1901, ch. CCX, page 636) made specified kindred of an indigent liable for *reimbursement* to the county for the aid it extended to the latter person. Pursuant to the authority of this statute, the various counties of this state have prosecuted actions to recover, as a debt, money representative of the aid so advanced. Then in 1933 this first act was repealed in conjunction with the enactment of a second relief statute (Stats. 1933, ch. 761, page 2005), wherein was inserted the language now embodied in sections 2576-2579 above mentioned. Under the provisions of this 1933 law the counties continued, as they had under the prior act, to file like actions for reimbursement for charity aid granted. In 1937, upon the repeal of former relief statutes, all legislation on this subject was codified and incorporated into the newly created Welfare and Institutions Code. Since then sections 2576-2579 have been interpreted by county officials engaged in the administration of the charity laws in this state in the same manner as the corresponding provisions in the 1933 act were regarded, and accordingly the counties proceeded, as before, to file suits predicated upon the theory of a cause of action for reimbursement from responsible kindred for charitable aid rendered to indigent relations. Thus is established a course of conduct followed without interruption for forty years. ▮ The contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is given great respect. (*People* v. *Southern Pacific Co.*, 209 Cal. 578 [290 Pac. 25]; *Riley* v. *Thompson*, 193 Cal. 773 [227 Pac. 772]; *Riley* v. *Forbes*, 193 Cal. 740 [227 Pac. 768]; 23 Cal.

Jur. 775, sec. 151].) As was said in *United States* v. *Philbrick*, 120 U. S. 52, 59 [7 S. Ct. 413, 30 L. Ed. 559]: "A contemporaneous construction by the officers upon whom was imposed the duty of executing those statutes is entitled to great weight; and since it is not clear that that construction was erroneous, it ought not now to be overturned." ▮ Furthermore, it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication. (*Lowe* v. *Yolo County Consolidated Water Co.*, 8 Cal. App. 167, 174 [96 Pac. 379]; 23 Cal. Jur. 782, sec. 158.) ▮ Wherever possible, a statute is to be construed in a way which will render it reasonable, fair and harmonious with its manifest purpose, and which will conform with the spirit of the act. (*Uhl* v. *Badaracco*, 199 Cal. 270, 284 [248 Pac. 917].) "Therefore," as is stated in *People* v. *Merrill*, 24 Cal. App. 206, 210 [140 Pac. 1075], "when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent."

▮ Several reasons bearing on the practical administration of county relief suggest themselves in support of our construction of these statutory enactments as expressive of the legislative intention to provide alternative modes of collection procedure. The abandonment of the county's long-authorized cause of action predicated upon the reimbursement theory, in favor of the exclusive remedy of requiring its filing of a petition for the adjudication of the extent of liability of relatives before the institution of a suit against the kindred of the indigent, not only would have disastrous consequences upon the applicant for aid, as well as upon the county, but likewise would be repugnant to the entire legislative scheme referable to relief in this state. The granting of public aid would be slackened pending the county's search for and investigation of responsible kindred who might be judicially declared liable to the county for the payment of certain sums. As the kindred's financial ability changed or the requirements of the recipient of aid varied, the county would be faced with the necessity of petitioning for further court

orders to correspond with these altered circumstances. Also of significance is the fact that whereas under the reimbursement theory the county may attach, as in any action for the recovery of money in this state, the assets of defendant kindred of the recipient of relief without actually locating such responsible relatives (subd. 1, sec. 537, Code Civ. Proc.), a like procedure would not be so available if it were necessary to have a prior judicial finding as to pecuniary ability and the measure of liability of defendant kindred. That such increased amount of litigation incident to the county's exercise of the remedy of attachment in its proceeding to recover for aid furnished an indigent would aggravate and hamper the operation of the established county relief system is not debatable. Akin to these considerations is the additional fact that the code provisions relative to the maintenance of juvenile delinquents and to the care of blind, mentally disordered and aged persons authorize actions against responsible relatives for *reimbursement* for aid extended by the county, an observation indicating that the legislature intended the same right of recovery to exist in all types of charitable relief, and that the aforementioned sections of the Welfare and Institutions Code applicable to the support of indigents should be so interpreted when the language therein contained is susceptible of such construction.

Respondent argues that the due process of law guaranty of the Constitution of this state (art. I, sec. 13, California Constitution) prohibits the maintenance of an action such as here instituted by appellant county. In this connection she urges that the decedent was entitled in her lifetime to notice and opportunity to be heard as to her liability and financial capacity to render aid to her adult daughter, and that without such hearing the decedent's estate may not be adjudged responsible for the relief furnished by the county as above outlined. It is her contention that since one of the direct purposes of the code provisions above quoted is to create, as between a parent and an adult child, a legal obligation to furnish support, maintenance and relief, a duty which at common law was only a moral one, resting on close blood relationship and humanitarian considerations, the statutory procedure to be followed in enforcing the liability imposed by the legislative enactment must be rigidly observed. This well-defined rule referable to the necessity of strict compliance with the provisions of a statute in derogation of the

common law is, of course, indisputable. But likewise it should be added that appellant county's maintenance of the present action is not inconsistent with this settled principle, since in our opinion its action based upon the reimbursement theory is expressly authorized by section 2576 of the Welfare and Institutions Code, as above construed. The fallacy of respondent's argument is her assumption that sections 2576-2578 contemplate not two types of action, but only one method of procedure, the filing of a petition for and the securing of a court order judicially declaring the responsibility of the specified kindred as a prerequisite to the county's commencement of a suit for the recovery of money expended in aid of the indigent relation. The fact that respondent as defendant in the county's action for reimbursement was furnished with notice of suit and afforded an opportunity to present her case in court satisfies the requirements of due process of law. This precise point was recently so determined in the *Estate of Stobie*, 30 Cal. App. (2d) 525, 529-530 [86 Pac. (2d) 883], wherein the state was suing for reimbursement for the care furnished an insane person under a statute making the estate of the incompetent liable.

Furthermore, with respect to the estate's liability upon the county's claim, it should be noted that section 573 of the Probate Code specifically provides for the survival of an action such as the instant one, which "might have been maintained" against the deceased during her lifetime.

For the reasons above expressed it is our opinion that the county's amended complaint herein states a cause of action under the provisions of section 2576 of the Welfare and Institutions Code. Accordingly, the judgment from which this appeal was taken is reversed, with directions to the trial court to overrule the demurrer and permit the respondent to answer if she so desire.

Gibson, C. J., Shenk, J., Houser, J., and Carter, J., concurred.