[Civ. No. 22193. Second Dist., Div. Two. Sept. 13, 1957.]

THE CITY OF LOS ANGELES, Respondent, v. RICHARD BARRETT et al., Appellants.

Dryden, Harrington, Horgan & Swartz for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Claude E. Hilker, Deputy City Attorney, for Respondent.

ASHBURN, J.—Defendants appeal from an order grant-ing a preliminary injunction against their proceeding with the construction of an advertising sign upon their lot which adjoins the Hollywood Freeway in the city of Los Angeles. The primary questions for determination are: (1) Whether the subject sign is a "roof sign" requiring a building permit from the Department of Building and Safety, or an "outdoor advertising structure" falling within the jurisdiction of the Board of Public Works and requiring its permit for construc-tion; (2) whether the continued construction of the sign after revocation of a permit was properly enjoined as one designed to have its advertising viewed primarily from the freeway and creating a condition endangering the safety of persons thereon.

Defendants' property, known as 411-417 North Hoover Street, consists of a lot which is 50 feet wide and 150 feet long; the south side adjoins the freeway and is considerably below the level of that traffic artery. There are two residences and a small one-room building on the lot, that building being on the south side of the front residence. Defendants obtained from the Department of Building and Safety a permit to con-struct a sign approximately 16 feet by 37½ feet in size to be supported by two piers, one on either side of the structure and both sunk 18 feet into the ground; the sign was to pass over and well above this one-room structure, rising approxi-mately 35 feet in the air. Later, an alteration permit was granted to defendants by the same department. No permit was obtained from the Board of Public Works. The building de-partment permits were revoked on September 21, 1955, "as these permits were issued in error." At that time the work of installation had proceeded only as far as digging of a hole for the footing for the sign, which had then been sunk 4 to 6 feet deep; neither supporting post was in place. Defendants continued to work without any permit until served with a restraining order on or about November 4, 1955. By that time the steel framework was practically completed. It strad-dled but did not touch the small structure above mentioned. The injunction order describes it as "a framework approxi-mately 45 feet high and designed to carry a sign approxi-mately 16 feet in height by 37½ feet in width."

The main contention of appellants is that this is a roof sign within the jurisdiction of the Building and Safety Department because it stands over a roof. Counsel rely in this contention upon the literal reading of certain sections of the municipal code.

Article 7 of chapter 6 of the municipal code (as introduced by Ordinance No. 78537) regulates, according to its title, "the erection, construction and maintenance of outdoor advertising structures, accessory signs, post signs and advertising statuary used for advertising purpose." Section 67.01 defines "outdoor advertising structure" as "any structure or device erected upon the surface of the ground for outdoor advertising purposes, or to attract the attention of the public and visible from any public street, alley or other public place, as distinguished from any sign attached to or placed on a building, upon which any poster, bill, printing, painting, device or other advertisement of any kind whatsoever may be placed, posted, painted, fastened or affixed, or used in connection with, including so-called electric and/or cutout signs; provided, however, that the same shall not be deemed to include . . . any sign not exceeding twenty (20) square feet in area used exclusively . . . to designate the name of the owner or occupant of the premises or to identify the premises such as physicians', or surgeons' name signs, apartment house signs, post sign or accessory sign." Section 67.18 (a) requires a written permit from the Board of Public Works to erect any outdoor advertising structure. Section 67.15.01, relating expressly to signs adjacent to freeways, says: "No outdoor advertising structure, post sign or advertising statuary shall be erected, constructed, relocated or maintained, regardless of the district or zone in which it is located: (a) If such structure, sign or statuary is designed to have or has the advertising thereon maintained primarily to be viewed from a main traveled roadway of a freeway; or (b) If such structure, sign or statuary, because of its location, size, nature or type, constitutes or tends to constitute a hazard to the safe and efficient operation of vehicles upon a freeway, or creates a condition which endangers the safety of persons or property thereon." Section 67.18 (c) 1 and 2 commands that no permit be issued to erect such a structure unless the Board of Public Works shall have determined that it is not designed to have the advertising thereon viewed primarily from a main traveled roadway of a freeway; that every application for a permit to erect such a structure within 500 feet of such freeway shall be considered by the Board of Public Works and if it determines that the same is not designed to have its advertising matter viewed primarily from the freeway it shall refer the application to the Board of Traffic Engineering Commissioners for its determination as to whether the structure would con-

stitute or tend to constitute a hazard to the safe and efficient operation of vehicles upon the freeway or create a condition endangering the safety of persons or property thereon; if the Board of Traffic Engineering Commissioners answers that question in the affirmative the application for the permit must be denied.

The complaint alleges that the structure under consideration "will have the advertising upon any sign attached thereto, maintained primarily to be viewed from a main traveled roadway of the Hollywood Freeway, and which structure and anticipated sign, because of its location, size, nature and type, will constitute and will tend to constitute a hazard to the safe and efficient operation of vehicles upon the Hollywood Freeway, and will create a condition which will endanger the safety of persons and property thereon." The affidavit of Mr. Lloyd M. Braff, which was presented in support of the motion, avers that he is general manager of the Department of Traffic of plaintiff city, refers to his professional qualifications and says that he has observed the framework of the billboard under construction; "[t]hat traffic volumes on this portion of the Hollywood Freeway are such as to make the traffic thereon among the most densely recorded in the United States; that in the outbound peak hour, 8900 vehicles have been recorded in one hour; that under such dense conditions this means that each of the four lanes has a frequency of traffic averaging 1.6 seconds between vehicles, while individual vehicles may frequently travel at intervals of less than three-quarters of a second. That under such conditions, any object which tends to detract a motorist from his concentration on driving, is deemed by traffic authorities to be a hazard; that the nationally accepted recognition time for advertising material is three seconds; that such distractions under these traffic conditions could prove to be hazardous to the motoring public. That, in his opinion, this billboard is designed to have the advertising thereon primarily to be viewed from the main traveled roadway of the Hollywood Freeway, and definitely constitutes a traffic hazard." Appellants' reply brief asserts that "[t]he facts are presented in this case by way of affidavits which are unchallenged, and in truth the facts are without dispute."

Appellants' reliance is upon chapter 9 of article 2 of the municipal code (per Ordinance No. 89,977). Section 91.5201 (a) contains these definitions: " 'Ground Sign' shall mean a detached sign erected upon or supported by the ground";

" 'Roof Sign' shall mean a sign erected upon or above a roof or parapet of a building or structure''; '' 'Wall Sign' shall mean any sign attached to, or erected against, the wall of a building or structure, with the exposed face of the sign in a plane approximately parallel to the plane of said wall.'' Section 91.5202(a) states the scope of the ordinance as follows: ''This chapter is intended to regulate the construction, erection, alteration, repair and maintenance of all signs and their supports *except ground signs.*'' (Emphasis added.) Subdivision (b)1 of said section requires a building permit for every sign regulated by that division. Subdivisions 2 and 3 of (b) of that same section parallel the provisions of section 67.18(c)1 and (c)2 concerning freeways and signs adjacent thereto. Section 91.5202(g)4 is the counterpart of section 67.15.01 quoted *supra* as to signs near freeways, but excepts from its operation ''any sign or sign structure constructed, painted, or maintained on a building on which the advertising is limited to'' the name of the building, name of occupant, name of product manufactured on the premises.

In addition to the general exception of ground signs from the jurisdiction of the Building and Safety Department, section 91.5203 specifically excepts ground signs of wood and says they are regulated by chapter 6 of article 7, i.e., Board of Public Works. Section 91.5206 also excepts roof signs on one story buildings constructed of wood, no portion of which extends more than four feet above the roof directly below.

Appellants' several arguments turn upon the precise language of the ordinance provisions. It is said that this sign was exempt from the jurisdiction of the Board of Public Works because it is a roof sign and not a ground sign; that it is to be attached to an existing building and ''in fact, a portion of the sign structure will be used as a support for the projecting roof of the building;'' that this structure is exempt from the provisions of Ordinance 89,977, concerning signs near freeways, because it is designed merely to display the name of the occupant of the building and the type of business conducted, viz., ''The Barra Co. Wine Vinegar.''

The claim that this is a roof sign because it is over a roof of the small building below it sticks in the bark. To so hold would throw open the flood gates of evasion and enable any property owner to avoid the freeway provisions of both ordinances by placing a detached ground sign over his hen house or garage, though not in contact with it. Such a construction is too far-fetched to be accepted as reasonable.

The argument concerning a sign attached to an existing building arises from the language of section 67.01, particularly the italicized portion as same is set forth in the opening brief: " '(a) The term "outdoor advertising structure" as used in this Article is hereby defined to be any structure or device erected upon the surface of the ground for outdoor advertising purposes, or to attract the attention of the public and visible from any public street, alley or other public place, *as distinguished from any sign attached to or placed on a building. . . .*' (Emphasis added.)" From this springboard appellants advance to the assertion that " [t]he amendatory plans show a modification of the building so that the roof is to be extended to cover a patio, the roof to be supported partially by the standing building, partially by one of the steel columns of the sign structure and partially by a post." Plainly, the roof of the patio is to be attached to and supported by the sign structure, not the reverse.

The ordinance provision concerning signs displaying name of occupant and type of business is part of the exception to the inhibition upon signs designed primarily to be viewed from the freeway and thus creating a freeway hazard. The language of that exception is limited to signs "constructed, painted or maintained on a building" (section 91.5202(g)4). Those words do not fit the subject sign unless mere words be exalted over substance.

This is not a problem in semantics, but one of reasonable construction of the Los Angeles Municipal Code, with reconciliation of its various parts so far as possible. ■ "Ordinances, like other statutes, must be given a reasonable construction. [Citations.] ■ An ordinance should be construed so as to harmonize with other statutes adopted by the same legislative body, if possible [citation], and to aid the design and intent of that body, and to effectuate the evident objects and purposes of the law. [Citations.]" (*People* v. *Amdur*, 123 Cal.App.2d Supp. 951, 961 [267 P.2d 445].) ■ "In the analysis of statutes for the purpose of finding the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments. (*Palache* v. *Pacific Ins. Co.*, 42 Cal. 418, 430.) While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language." (*County of*

*Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526].)

The control over construction and safety of buildings is lodged by the Los Angeles City Charter in the Department of Building and Safety, while public streets are under the supervision of the Board of Public Works. Incident to the construction and safety of building, the municipal code gives control of signs projecting from or affixed to walls or roofs of buildings to the building department. On the other hand, those having to do with safety of persons using public streets, especially freeways, come within the jurisdiction of the Board of Public Works. This broad distinction is reflected in section 67.01, quoted above.

The order granting a preliminary injunction carries with it an implied finding that the sign in question is within the field covered by permits from the Board of Public Works, and that erection without its permit is a violation of the law and a public nuisance.

While the complaint alleges an absence of a Board of Public Works building permit, it also avers that the structure is designed to have its advertising matter viewed primarily from the Hollywood Freeway and that it will constitute a hazard to persons and property thereon. These allegations are quoted above. They were supported by the affidavit of Mr. Braff, also quoted herein. It was proved that the permit issued by the Department of Building and Safety was revoked upon the ground it had been issued in error, and it further appears that the major portion of the sign structure was erected without any existing permit so to do. The court impliedly found to be true the averments of the complaint and the Braff affidavit concerning the hazard to traffic which it would create if finished. This afforded adequate basis for a preliminary injunction.

The court has a broad discretion in passing upon a motion for temporary injunction. It is not necessary to determine at that time the ultimate rights of the parties. Unless an abuse of discretion appears, such an order will not be reversed. (27 Cal.Jur.2d § 8, p. 111.) No abuse of discretion appears here.

Order affirmed.

Moore, P. J., and Fox, J., concurred.