[Civ. No. 2446. Fifth Dist. June 22, 1976.]

JORGE LARA et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF KERN COUNTY,
Defendant and Respondent;
HERBERT P. SEARS COMPANY, INC., Intervener and Respondent.

## Counsel

Charles F. Elsesser, Jr., for Plaintiffs and Appellants.

Ralph B. Jordan, County Counsel, George Wright Quick and Peter C. Carton, Deputy County Counsels, for Defendant and Respondent.

Richard Hosking for Intervener and Respondent.

## Opinion

## FRANSON, J.—

### Statement of the Case

Appellants filed against the respondent Kern County Board of Supervisors a petition for writ of mandamus and complaint for injunctive and declaratory relief on behalf of themselves and all other persons similarly situated, alleging that they represented the responsible relatives of indigent county hospital patients and the patients themselves, and challenging the legality of the county's practice of assigning for collection debts incurred for services rendered at Kern County General Hospital. Appellants alleged that such assignments are forbidden to the board of supervisors under the exclusive collection schemes mandated by Health and Safety Code section 1473 and Welfare and Insttutions Code section 17300.

Respondent Herbert P. Sears Co., Inc., a licensed collection agency, filed a complaint in intervention.

Respondent board of supervisors filed its return by way of general demurrer, and respondent Herbert P. Sears Co., Inc. filed a motion for judgment on the pleadings. The demurrer was sustained with leave to amend, and the motion was granted with leave to amend. No amendments having been filed, a judgment was entered dismissing the petition and complaint.

### Facts

Appellant Lara is a 22-year-old widowed, seasonal farmworker. Lara's late wife entered Kern County General Hospital to give birth to a child.

After the child's birth, Mrs. Lara died. The hospital charges rendered in treating the child totaled approximately $175. Lara himself has not received any services from the county hospital.

The board assigned Lara's account to Kern County Collection Service, a licensed collection agency, pursuant to the agreement attached to the complaint as "Exhibit A." The collection agency sent Lara a series of notices demanding payment and threatening legal action if payment was not received.

Appellant Vallesteros received medical treatment at Kern County General Hospital totaling $461.30. She signed an agreement to pay that amount to the hospital in monthly installments of $15; thereafter, she became financially unable to make the monthly payments. Her account was assigned by the board to Kern County Collection Service. The agency sent her a series of notices in an attempt to obtain payment.

The agreement between the county and Kern County Collection Service provides in part:

"3. It is further hereby agreed and understood, as follows:

"(a) The County reserves the right to re-evaluate and to adjust or cancel any bill, account or claim assigned for collection to the Collection Agency, particularly where the collection of the same would result in undue hardship to the debtor or his dependents, or presumably result in indigency for the family or dependents of such debtor. In this connection, the Collection Agency also agrees to report to the County's authorized representative any case in which the collection or enforcement of a bill, account or claim would result in undue hardship to the debtor for the purpose of enabling the County to re-evaluate, adjust or cancel the claim against such debtor, as herein provided. In the event any bill, account or claim is cancelled by the County, pursuant to the provisions of this paragraph, the County shall not be liable to the Collection Agency for the payment of any fee or commission on said bill, account or claim. If any bill, account or claim is re-evaluated by the County and is adjusted, but not entirely cancelled, and is subsequently paid by the debtor in the amount so adjusted, the County shall pay the Collection Agency a commission on the adjusted amount only."

## Discussion

This appeal involves the interpretation of Health and Safety Code section 1473 and Welfare and Institutions Code section 17300, and the question whether a county may assign delinquent accounts for hospital services to private collection agencies. Appellants contend these statutes were intended to provide an exclusive collection scheme designed to protect county hospital patients and their relatives from overreaching by the county in its debt-collection practices. Respondents contend that these statutes were enacted only to give the county additional collection powers to those specified in Government Code sections 26220-26222. For the reasons stated, we agree with respondents.

Government Code sections 26220-26222, enacted in 1953, deal with assignment for collection of claims due a county. Section 26220 provides:

"The board of supervisors may by a four-fifths vote of its members assign for purposes of collection under such terms and conditions as the board may prescribe any or all delinquent bills, claims and accounts, thirty . . . days after the date upon which they are due and payable to the county, and any or all money judgments taken in the name of the county, to a collection agency duly licensed by the State . . . ."[1]

Health and Safety Code section 1473, added in 1961, provides as follows:

"The board of supervisors in each county may fix the rates to be charged patients admitted to any county hospital and *may* direct any county officer to collect the amounts due the county for hospitalization and medical care. In fixing and collecting hospital charges the board may exercise all the powers conferred by Chapter 5 (commencing with Section 17400) of Part 5 of Division 9 of the Welfare and Institutions Code. [2] The board, or such county officer as it may authorize or

---

[1]We judicially note that under the authority of Government Code section 26220, some 22 counties in California have entered into agreements with private agencies for the collection of delinquent accounts including unpaid hospital charges. The longstanding administrative practice of assigning delinquent hospital accounts to collection agencies is entitled to considerable weight in construing the statutes here involved. (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405].)

[2]Welfare and Institutions Code sections 17400-17410 deal with termination and recovery of county assistance by the county. Section 17400 provides for the subordination and foreclosure of liens taken against the property of recipients of county medical care.

designate, may adjust or compromise hospital charges for any of the following reasons:

"(a) The patient, his estate, or legally responsible relatives are unable to pay the charges.

"(b) Collection of the charges is barred by the statute of limitations or is otherwise legally uncollectible.

"(c) The cost of administering a collection procedure would exceed the amount of revenue which might reasonably be anticipated would be recovered.

"(d) Neither the patient nor his legally responsible relatives can be located.

"The amendments to this section enacted by the Legislature at the 1973-74 Regular Session shall not be construed to require that any county adopt standards of indigency or requirements of reimbursement more stringent than those in use by such county immediately prior to the effective date of such amendments." (Italics added.)

Section 1473 was derived from former Welfare and Institutions Code section 203.5 which had been in effect since 1947, and similarly gave the board discretion to fix the rates to be charged patients admitted to any county hospital and to direct any county officer to collect the amounts due the county for hospital and medical care. Former section 203.5 also provided that in fixing and collecting the hospital charges the board might exercise the collection powers conferred by article 4 of chapter 2 of division 4 of then Welfare and Institutions Code, and the board or such county officer as it had authorized or designated might adjust or compromise the hospital charges according to the financial condition of

---

Section 17401 provides limitations on the enforcement of liens so as to protect the recipient's home. It further prohibits charging interest in connection with any debt incurred for county hospital care, and allows the county to subordinate its lien in proper circumstances to allow a homeowner to improve on his property. The county's use of these liens is further limited by section 17407 and their release is provided for in section 17405. Section 17402 gives counties the power to attach the estates of recipients. Sections 17403-17404 provide the procedure and limitations on that procedure for suing former recipients who have subsequently obtained property. Section 17409 provides a schedule of properties which are exempt from attachment. As hereafter explained, the collection agency, as assignee of the delinquent accounts, is subject to all equities and defenses available to the debtor against the county.

the patient, his estate or legally responsible relative. (Stats. 1947, ch. 1416, pp. 2974-2975.)

■ Appellants contend that the language in section 1473 authorizing the board of supervisors to direct a "county officer" to collect the amounts due for hospital services by implication forecloses collection by anyone other than a county officer. The statute, however, does not compel such an interpretation. Collection efforts by a private agency pursuant to an assignment from a county officer duly authorized by the board of supervisors under the power contained in Government Code section 26220 reasonably can be viewed as collection efforts by the officer himself. We see no difference between the mechanics of collecting a delinquent account by a county officer, and the mechanics of collection by a private entity once the board has exercised its discretion under section 1473 to determine the amount of the charges to be collected from the patient, his estate or legally responsible relatives. Thus, section 1473 can be interpreted as permitting collection efforts by private agencies.

Furthermore, section 1473 contains the permissive word "may" throughout. ■ Although "may" may be construed to be mandatory where the object to be obtained compels such a construction, or where that construction is necessary to give effect to the legislative intent, in the absence of such special circumstances, it should be interpreted as permissive or conferring discretion. (See Health & Saf. Code, § 16; 45 Cal.Jur.2d, Statutes, § 157, pp. 659-660.) ■ This rule is consistent with the general principle that, unless clearly indicated otherwise, the words in a statute are to be given a sensible construction according to their commonly understood meaning. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 642 [122 P.2d 526].)

We find no reason to give the word "may" a mandatory construction. The thrust of appellants' charge of illegality in the assignment procedure is that the collection agencies will not be bound by the same procedures and limitations as the county under Health and Safety Code section 1473 and Welfare and Institutions Code section 17400 et seq.; that because of its profit motive a private agency lacks the incentive to adjust or compromise claims in hardship cases. However, appellants overlook the legal consequences of an assignment. ■ "[A]ssignment carries with it all the rights of the assignor, but the assignee of a nonnegotiable thing in action can acquire no greater right than that possessed by his assignor, and takes subject to all equities and defenses existing in favor of the obligor prior to notice of the assignment and whether acquired before or

after execution of the assignment." (7 Cal.Jur.3d, Assignments, § 45, pp. 73-74; *Childs etc. Co.* v. *Shelburne Realty Co.* (1943) 23 Cal.2d 263, 267 [143 P.2d 697]; Civ. Code, § 1459; Code Civ. Proc., § 368.) ■ Hence, the patient and his relatives have available against the collection agency all of the equities and defenses they would have against the county.

Moreover, under paragraph 3 of the contract with Kern County Collection Agency, it is agreed that the county reserves the right to re-evaluate and to adjust or cancel any bill or claim assigned for collection where the collection would result in undue hardship to the debtor or his dependents, or result in indigency for the debtor or his dependents. The agency also agrees to report to the county any case in which the collection or enforcement of the claim would result in undue hardship to the debtor to enable the county to re-evaluate, adjust or cancel the claim against the debtor. Thus, regardless of the assignment, the county has not surrendered its discretion to adjust the claims against the patient or his responsible relatives.

Since there are no allegations to the contrary, we assume that, before the claim for hospital services rendered to appellant Vallesteros was assigned for collection, the county had evaluated the claim under the authority contained in Health and Safety Code section 1473 to determine if Vallesteros was able to pay the charges. It must be presumed that before the account was assigned for collection the county officials charged with the responsibility of adjusting, compromising and collecting the hospital account properly exercised their discretion under section 1473 to see that Vallesteros was not to be dunned for a bill which she was unable to pay. (Evid. Code, § 664.)

By holding the language in section 1473 discretionary, that section and Government Code section 26220 are harmonized, and the board has two options available to it: it may designate a county officer, such as the sheriff or treasurer, to collect the accounts from the patients, or it may assign the accounts for collection, provided, as in the instant case, it first exercises the discretion conferred in section 1473 to determine the patient's ability to pay, and providing, further, it reserves the right to adjust or cancel any bill or claim assigned when its collection would result in hardship to the patient or his dependents. ■ This interpretation accords with the well-settled rules of statutory construction that, if possible, the codes are to be read together and blended into each other as though there was but a single statute (*County of Butte* v. *Merrill* (1903)

141 Cal. 396, 399 [74 P. 1036]; *People* v. *Ashley* (1971) 17 Cal.App.3d 1122, 1126 [95 Cal.Rptr. 509]), and that the existence of a particular statute does not negate the effect of a general statute unless there is a conflict. (Code Civ. Proc., § 1859; *Brandt* v. *Superior Court* (1967) 67 Cal.2d 437, 442 [62 Cal.Rptr. 429, 432 P.2d 31].) We find no conflict between Health and Safety Code section 1473 and Government Code section 26220.

Appellants' reliance on *County of San Bernardino* v. *Simmons* (1956) 46 Cal.2d 394 [296 P.2d 329] to support their contention that Health and Safety Code section 1473 establishes an exclusive statutory scheme for the recovery of hospital charges from a patient is misplaced. There, the county brought an action against the adult daughter of a recipient of old-age security to recover a portion of the payments. The county's second cause of action was based on an asserted subrogation of the county to the right of a parent to be supported by his child under the provisions of Civil Code section 206. The court held this theory of recovery erroneous, finding that the Welfare and Institutions Code set out a procedure for recovery by the county when it pays aid to a needy aged person from a spouse or adult child who is able to support the aged person, but that the responsible relative cannot be held directly liable to the county under Civil Code section 206. The court stated there is nothing in section 206 which suggests an intention to create a substantive liability of the child of poor parents to public agencies. (46 Cal.2d at pp. 396-398.) *Simmons,* However, did not involve the question of the validity of an assignment by the county of its right to recover aid.

For the reasons stated, we conclude that the assignment to private agencies of claims against patients for services rendered at a county hospital is lawful; the sustaining of the demurrer and granting a motion to strike the petition and complaint of appellant Vallesteros was proper.

■ We turn now to Welfare and Institutions Code section 17300 which sets forth a procedure for recovery from responsible relatives of county aid rendered to indigent patients, and to the question whether that section prohibits assignment by the county of its claim against appellant Lara for medical services rendered to Mrs. Lara.

Welfare and Institutions Code section 17300, added in 1965, provides in pertinent part:

"All aid rendered by the county under this part shall be a charge against the spouse, parent, and adult child of the recipient thereof, and the county rendering aid shall be entitled to reimbursement therefor.

"The board of supervisors of the county rendering aid shall determine if the spouse, parent, or adult child, or any of them, have financial ability to support or contribute to the support of the recipient and were pecuniarily able to support or contribute to the support of the recipient during the time aid was rendered. If in the opinion of the board of supervisors pecuniary ability existed when the aid was given, and exists when the matter comes before the board of supervisors, the board shall request the district attorney or other civil legal officer of the county granting aid to proceed against such responsible relative or relatives.

"Upon such request, the district attorney or other civil legal officer shall maintain an action on behalf of the county granting aid against the relative or relatives to recover for the county the aid rendered and to secure an order requiring the payment of any sums which may become due in the future."

While it may be argued that, because section 17300 is within part 5 of division 9 of the Welfare and Institutions Code dealing with county aid to indigents and does not expressly relate to medical services rendered at county hospitals, the statute is inapplicable to the collection of unpaid hospital charges. We will assume, however, that the section pertains to reimbursement of hospital services as well as other "aid" rendered to indigents by the county. (See *County of Los Angeles* v. *Frisbie, supra,* 19 Cal.2d 634; *Santa Barbara County* v. *Monical* (1970) 10 Cal.App.3d 249 [88 Cal.Rptr. 717].)

Section 17300 is similar to Health and Safety Code section 1473 in that it imposes on the board of supervisors the responsibility of determining the pecuniary ability of the designated relative to pay for the aid rendered to the indigent patient and authorizes the board to request the district attorney or other civil legal officer of the county to proceed against the relative by legal action.

■ Although the statute uses the word "shall" in describing the board's authority to request the district attorney or county legal officer to proceed against the responsible relative, and in describing the duty of those officers to maintain an action against the relatives, the word does not necessarily have a mandatory meaning. (See *Estate of Mitchell* (1942)

20 Cal.2d 48, 51 [123 P.2d 503].) Whether it is mandatory depends on the intention of the Legislature. (*Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 437 [196 P.2d 884]; 45 Cal.Jur.2d, Statutes, § 157, pp. 658, 659.) ■ In determining the legislative intent we are to look to the general tenor and scope of the entire legislative scheme rather than the exact words of the statute. ■ "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious design of the law should not be sacrificed to a literal interpretation of such language." (*County of Los Angeles* v. *Frisbie, supra,* 19 Cal.2d at p. 639.) As previously noted, we are required to harmonize the different code sections on the same subject where reasonably possible in order that all may be effective. (Code Civ. Proc., § 1859; *Brandt* v. *Superior Court, supra,* 67 Cal.2d 437.)

■ We do not discern a legislative reason or intent to prohibit the assignment of a county's claim against responsible relatives for reimbursement of the cost of medical services to indigents. ■ Just as with a claim against the patient, a claim against the patient's relatives will be assigned only after the board has exercised its discretion in determining the ability of the relative to pay the charges, and the relative has available to him against the assignee all of the equities and defenses he would have against the county.

■ By construing the word "shall" in section 17300 as permissive, the legislative policy expressed in Government Code section 26220 is accommodated, and the rights of the indigent patient's relatives and the county are protected.

Appellants' petition and complaint failed to state a cause of action against the respondent board of supervisors.

The judgment is affirmed.

Brown (G. A.), P. J., and Keane, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 26, 1976. Mosk, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.