TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 90-923 |
| of | : | |
| | : | |
| DANIEL E. LUNGREN | : | AUGUST 7, 1991 |
| Attorney General | : | |
| | : | |
| ANTHONY S. DaVIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE ROBERT B. PRESLEY, MEMBER OF THE SENATE, has requested an opinion on the following question:

May the Bureau of Automotive Repair direct licensed smog check stations to deny a certificate of compliance to the owner of a vehicle if the vehicle's emission control system contains an aftermarket component that has not been approved for installation on the vehicle by the State Air Resources Board under Vehicle Code section 27156?

CONCLUSION

The Bureau of Automotive Repair may direct licensed smog check stations to deny a certificate of compliance to the owner of a vehicle if the vehicle's emission control system contains an aftermarket component that has not been approved for installation on the vehicle by the State Air Resources Board under Vehicle Code section 27156.

ANALYSIS

Under California's motor vehicle inspection and maintenance program (Health & Saf. Code, § 44000 et seq.)[1] some 17 of the state's 22 million motor vehicles are presently required to

_____

[1]All section references are to the Health and Safety Code unless otherwise specified.

1.                                    90-923

have a biennial "smog check" of their emission control system. (Cf. § 44011; Rapoport, *Sins of Emission* (May 1991) California Magazine, p. 61.) The program is enforced and administered by the Bureau of Automotive Repair ("Bureau") within the Department of Consumer Affairs ("Department"). (§ 44001.5, subd. (a); cf. §§ 44002, 44012.)

A smog check test determines whether the emission control devices and systems required by law to be on a vehicle "are installed and functioning correctly." (Cf. § 44012, subd. (a).) As presently designed, it consists of (1) a visual inspection of the vehicle to determine whether all the emission control devices and systems required by state and federal law are installed correctly, (2) an actual test of the vehicle's emissions of hydrocarbons, carbon monoxide, and carbon dioxide; and (3) a "functional" check of certain components of the vehicle's emission control system, such as a probing the fuel fillpipe lead restrictor and checking the emission control warning indicators. (See Cal. Code Regs., tit. 16, § 3340.42.) If a vehicle passes the test, a licensed smog check station must issue a certificate of compliance for the vehicle; if the vehicle does not, a certificate may not be issued. (§ 44015.)

The question presented for analysis is whether a vehicle may be denied a certificate of compliance because it contains an "aftermarket part" in its emission control system that has not been approved for installation by the State Air Resources Board ("Board") pursuant to section 27156 of the Vehicle Code. An "aftermarket part" is one that replaces, modifies, or is added to the original manufacturer's equipment. (Cf. Cal. Code Regs., tit. 16, § 1900(b)(1), (10), (13).) Under section 27156 of the Vehicle Code, it is illegal to (1) modify or alter any required motor vehicle pollution control device or (2) to install a device as part of a required motor vehicle pollution control system which alters or modifies the original design or performance of the system, unless the Board has found that the particular alteration or modification does not reduce the effectiveness of the system or does not result in higher emission levels from the vehicle than those permitted for its model year. The aftermarket part here is one which has not been approved and exempted under section 27156 of the Vehicle Code. We refer to it as an "unexempted aftermarket part."

Our inquiry into the Bureau's authority concerning the issuance of certificates of compliance[2] is governed by the basic

---

[2]The Bureau's directives to individual smog check stations may be "enforced" by the assessment of civil penalties, by suspending, revoking, or not renewing the station's license, and by suspending or revoking the qualifications of the station's mechanics.

rule that administrative agencies have only such powers as have been conferred on them, expressly or by implication, by the Constitution or statute. (Gov. Code, § 11342.1; *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 205; *Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103; *California State Restaurant Assn.* v. *Whitlow* (1976) 58 Cal.App.3d 340, 346-347.) An administrative agency may not make a rule or regulation that alters, enlarges, or impairs the terms of the enabling legislation (*Whitcomb Hotel, Inc.* v. *Cal.Emps. Com.* (1944) 24 Cal.2d 753, 757; *Selby* v. *Department of Motor Vehicles* (1980) 110 Cal.App.3d 470, 474-475), and an administrative rule or regulation that does so is void (*Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748; 64 Ops.Cal.Atty.Gen. 425, 429-430 (1981)).

Section 44010 provides that "the motor vehicle inspection program shall provide for privately operated stations which shall be ... authorized to issue certificates of compliance ... to vehicles which meet the requirements of [sections 44000-44071]." Section 44012 sets forth what the test at a smog check station is to entail:

> "The test at the smog check stations shall be performed in accordance with procedures prescribed by the department [of Consumer Affairs] pursuant to Section 44013 and shall include all of the following:
>
> "(a) *A determination that emission control devices and systems required by state and federal law are installed and functioning correctly in accordance with the test procedure adopted pursuant to subdivision (b) of Section 44013.*
>
> "(b) ....
>
> "(c) For other than diesel-powered vehicles, a test of the vehicle's exhaust emissions of hydrocarbons, carbon monoxide, and carbon dioxide in an idle mode ... in accordance with the procedure prescribed by the department.
>
> "(d) ...." (Emphasis added.)

Subdivision (b) of section 44013 provides in part:

> "The [Department], in cooperation with the [Board], shall research and prescribe test procedures to be applied in inspecting motor vehicles under this chapter, which procedures shall be simple, cost effective, and consistent with the requirements of section 44012...."

_____

(§§ 44030, 44035, 44050, 44051, 44055.)

We believe that the smog check test contemplated by the Legislature permits the Bureau to direct smog check stations to deny certificates of compliance when a vehicle has been equipped with an unexempted aftermarket part in its emissions control system, even though the vehicle has all required emission-related components installed and passes the emissions test portion of the smog check.

We first address what is meant by a device "required by state and federal law" to be installed on a vehicle. The inquiry is necessary because one cannot find in state or federal law a complete litany of all particular devices that are "required" to be placed in the emission control system of a particular vehicle. (Cf. 54 Ops.Cal.Atty.Gen. 172, 175 (1971).) While state and federal law may require that vehicle manufacturers have certain systems and devices present in their vehicles, and while they may require that the systems meet stringent emission standards, the requirements do not mandate that a particular type of system be installed on a particular vehicle. Thus, the emission control systems that are developed by manufacturers vary in strategy and design. Needless to say, if the systems that are developed vary, so will their component devices.

We faced a similar problem in 54 Ops.Cal.Atty.Gen. 173, *supra*, where, as here, we had to determine whether a particular device (an evaporative loss control device) was one that was "required" to be installed on a vehicle under a statutory scheme which only set forth an emissions limit for a particular aspect of a vehicle's pollution control system (the maximum fuel evaporative losses from the fuel system) and did not set forth particular devices that were required to achieve it. The statutory scheme was the Pure Air Act of 1968 (then §§ 39080-39201, see now § 43000 et seq.) as implemented by section 27156 of the Vehicle Code --which, again, speaks of modifying or altering "required" motor vehicle pollution control devices. We concluded that the tenor of the entire statutory plan was such that a device placed on a vehicle by the manufacturer to meet an emissions control requirement was a device that the law "required" to be on the vehicle. (54 Ops.Cal.Atty.Gen. at 176-177.)

Both the statutory scheme of our prior opinion and the one here were designed to reduce air pollution from vehicular emissions. (Compare § 43000 with § 44000.) Since similar phrases used in statutes on like subjects will be given the same interpretation in the absence of contrary indications of legislative intent (cf. *Hunstock* v. *Estate Development Corp.* (1943) 22 Cal.2d 205, 210-211; *People* v. *Hill* (1980) 103 Cal.App.3d 525, 533 fn. 4; *Estate of Hoertkorn* (1979) 88 Cal.App.3d 461, 465-466), we can presume that when the Legislature spoke of "emission control devices and systems required by state and federal law" in subdivision (a) of section 44012, it also had in mind, *as a starting point*, those devices and systems which the manufacturer

originally configured for a vehicle's emissions control system to meet federal and state quantitative emissions requirements and installed on the vehicle when it was assembled. As we shall demonstrate, however, the phrase may also be construed to include aftermarket parts installed in the emission control system of a vehicle.

Under section 27156 of the Vehicle Code it is illegal to operate a motor vehicle that is required to be equipped with a motor vehicle pollution control device unless the vehicle is equipped "with the required ... device ... correctly installed and in operating condition."[3] The section also makes it illegal to modify or alter any required device. Our aftermarket part would do so. (Cf. Cal. Code Regs., tit. 13, § 1900(b)(1), (10).)

But Vehicle Code section 27156 also recognizes that original manufacturer equipment for an emission control system can be replaced during a vehicle's lifetime without necessarily degrading the efficacy of the system. The section provides that its prohibitions do not apply to:

> "...an alteration, modification, or modifying device, apparatus, or mechanism found by resolution of the State Air Resources Board either: (1) To not reduce the effectiveness of any required motor vehicle pollution control device; or (2) To result in emissions from any such modified or altered vehicle which are at levels which comply with existing state or federal standards for that model year of the vehicle being modified or converted."

The Legislature has thus left to the Board the determination of whether an aftermarket part will degrade an emission control system, and pursuant thereto the Board conducts an aftermarket

---

[3]Although the term "motor vehicle pollution control device" is not defined in section 27156 or any other section of the Vehicle Code, the section does refer, inter alia, to a device required "under Part 5 (commencing with section 43000) of Division 26 of the Health and Safety Code." For purposes of that Division, the term is defined to mean "equipment designed for installation on a motor vehicle for the purpose of reducing the air contaminants emitted from the vehicle, or a system or engine modification on a motor vehicle which causes a reduction of air contaminants emitted from the vehicle" (§ 39040) and we can safely presume the Legislature at least had that definition in mind for section 27156 of the Vehicle Code.

parts exemption program.  (Cal. Code Regs., tit. 13, § 2220 et seq.)[4]

The evaluation of aftermarket parts by the Board and the Bureau's smog check program are integrally related.  Both statutory schemes must be harmonized and the application of one statute may not ignore the requirements of the other if at all possible.  (Cf. *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679; *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7; *Lara* v. *Board of Supervisors* (1976) 59 Cal.App.3d 399, 408-409; *People* v. *Ashley* (1971) 17 Cal.App.3d 1122, 1126.)  Indeed, the Legislature has specifically directed the Bureau and the Department to cooperate with the Board in prescribing the test procedures to be applied in inspecting motor vehicles in the smog check program.  (§ 44013, subd. (b).)

In 54 Ops.Cal.Atty.Gen. 173, *supra*, we observed that in California vehicular air pollution is controlled at three levels:

"...air pollution control is achieved by (1) approval of the entire vehicle, including the various air pollution control systems in ... new automobiles prior to the time of their initial sale, (2) the prohibition of their use without such systems and (3) *the prohibition against alteration of the original air pollution control systems on the approved automobile unless an exemption has been given by the State Air Resources Board*."  (54 Ops.Cal.Atty.Gen. at 175-176; emphasis added.)

We believe that the Legislature meant for the aftermarket parts exemption program to be relied upon and play a part in the smog check program.  Particularly we conclude that the reference to "emission control devices ... required by state and federal law to be installed ... correctly" contained in section 44012 means devices that were originally part of a vehicle's emissions control system when it was manufactured <u>or</u> devices that were subsequently approved for installation pursuant to Vehicle Code section 27156. A corollary of this is that unless an aftermarket part has been so approved, it would not be an "emission control device[] ... required by state ... law [to be] installed ... correctly."  Since a smog check test is meant to determine whether the emission control devices are "installed ... correctly," the presence of an unexempted aftermarket part would cause a vehicle to fail a smog

_____

[4]Exemptions are based on testing of a part, undertaken at the behest of the manufacturer, to demonstrate that the part does not adversely affect vehicular emissions.  An emissions-related part is defined as "any automotive part which affects any regulated emissions from a motor vehicle which is subject to California or federal emissions standards ...."  (Cal. Code Regs., tit. 13, § 1900(b)(3).)  A list of the specific aftermarket parts that have received exemption comprises more than 60 pages.

test because the required determination could not be made. If such part is found, a certificate of compliance must not be issued. (§ 44015, subd. (a).)[5]

The same result may also be reached by a different route. Section 24002 of the Vehicle Code makes it unlawful "to operate any vehicle ... which is not equipped as required by [the Vehicle] Code." Section 27156 of the Vehicle Code makes an unexempted aftermarket part illegal equipment for a vehicle, and thus one equipped with such a part may not be operated in this state. In order for a vehicle to be driven in California, it must first be registered with the Department of Motor Vehicles (Veh. Code, §§ 4000(a)(1), 4000.4), and for that registration to be obtained, a certificate of compliance must first be obtained from a licenced smog check station (Veh. Code, §§ 4000.1, 4000.2, 4000.3). These Vehicle Code sections too must be harmonized. Thus we cannot entertain the notion that the Legislature intended to forbid the operation of vehicles that were not properly equipped (Veh. Code, § 24002), while at the same time having smog check stations issue certificates of compliance for them to be registered and driven.

We therefore conclude that the Bureau may direct licensed smog check stations to deny certificates of compliance to the owners of vehicles that have been equipped with an aftermarket component in the emission control system which has not been approved for installation by the Board pursuant to section 27156 of the Vehicle Code.

* * * * *

---

[5]We would also note that section 44012, subdivision (a) sets forth certain particulars of what a smog check is to "include." The use of the word "include" normally is one of enlargement rather than limitation (cf. *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639; *Paramount Gen. Hosp. Co.* v. *Natural Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501; *People* v. *Horner* (1970) 9 Cal.App.3d 23, 27), and so its use would indicate that the Legislature did not mean to restrict the Bureau in "prescribing [the] test procedures to be applied in inspecting motor vehicles" in the smog check program. Accordingly, even if we did not bring an aftermarket part within the rubric of being a "device required by state law" to be installed correctly, we would conclude that the Bureau would have the latitude to consider the phrase as having an implied negative so as to forbid the installation of devices that are prohibited by state law.